## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **MICHAEL SUTTON**, AND<br>**KENNY PHILLIPS**,<br>c/o Friedman, Gilbert + Gerhardstein<br>50 Public Square, Suite 1900<br>Cleveland, OH 44113,<br><br>　　　　Plaintiffs,<br><br>-vs-<br><br>**DANIEL LENTZ**,<br>**MICHAEL KEANE**, AND<br>**CARL HARTMAN**,<br>c/o City of Cleveland Law Department<br>601 Lakeside Avenue, Room 106<br>Cleveland, Ohio 44114,<br><br>**CUYAHOGA COUNTY, OHIO**,<br>c/o Cuyahoga County Prosecutor's Office<br>The Justice Center, Courts Tower<br>1200 Ontario Street, 8th Floor<br>Cleveland, Ohio 44113,<br><br>　　　　Defendants. | Case No.<br><br>Judge<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michael Sutton and Kenny Phillips state as follows for their Complaint:

### INTRODUCTION

1.　　　　This is a civil rights action. Plaintiffs Michael Sutton and Kenny Phillips are innocent men who were imprisoned for fifteen years for crimes they did not commit.

2.　　　　Despite the lack of any physical evidence, Plaintiffs were convicted for their supposed role in a drive-by shooting and for shooting at Defendant Officer Daniel Lentz after he pulled over their vehicle. During the course of the investigation, prosecution, and trial,

exculpatory evidence was suppressed, and materially false testimony was offered against Sutton and Phillips.

3.  Defendants Daniel Lentz and Michael Keane, two of the arresting officers, fabricated evidence against Sutton and Phillips to justify the arrest. At trial, Defendants Lentz and Keane testified falsely, consistent with their fabricated evidence.

4.  Meanwhile, the eyewitness accounts of the other two officers on the scene, Officer Lundy and former Officer Jones, were suppressed. These eyewitness accounts revealed that Defendants Lentz and Keane had fabricated the evidence against Sutton and Philipps. They reported to Defendant Detective Carl Hartman, the officer investigating the shooting, that no one had shot at the officers at all, but this exculpatory and impeaching information was suppressed.

5.  Defendant Hartman told Lundy and Jones to go home without testifying and without providing this exculpatory and impeaching information to the prosecutors.

6.  Alternatively, Hartman did provide this evidence to the prosecutors, and it was Cuyahoga County prosecutors who suppressed the evidence, in conformance with a longstanding and official policy by which prosecutors were permitted not to disclose certain exculpatory evidence, including witness statements and police reports.

7.  This critical exculpatory evidence was not discovered until 2015, after the Wrongful Conviction Project of the Ohio Public Defender's Office was finally able to obtain the statements of Lundy and Jones, exposing the false evidence of Defendants Lentz and Keane, the false testimony of Lentz and Keane, and the suppression of the exculpatory eyewitness accounts of Jones and Lundy.

8.     Based on this evidence, the Plaintiffs filed for a new trial. Their motions were granted, and on September 27, 2022, with the benefit of the exculpatory evidence that had been withheld from them during the original trial, they were found not guilty on all counts.

9.     As a result of the wrongful conduct of the Defendants, Plaintiffs Sutton and Phillips spent fifteen years imprisoned for crimes that they did not commit. Only seventeen and eighteen when they were arrested, they had their freedom and their futures ripped away from them just as their lives were supposed to be starting. When they were finally released, they had spent nearly half of their lives in prison.

10.    As a further result of the wrongful conduct of the Defendants, the actual shooters went free and the victims of the shooting received no justice.

11.    Sutton and Phillips therefore bring this action under 42 U.S.C. § 1983 and state law seeking redress for wrongs done to them, as well as to deter future misconduct.

## JURISDICTION AND VENUE

12.    This action arises under the laws of the United States, and jurisdiction is conferred on this Court under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Supplemental jurisdiction of the Court over the claims arising under state law is invoked under 28 U.S.C. § 1367 (supplemental jurisdiction).

13.    Venue in the Northern District of Ohio is proper under 28 U.S.C. § 1391(b), because it is the district in which many if not all of the defendants reside, and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

14.    Plaintiff **Michael Sutton ("Sutton")** is 36 years old.  He currently resides in Cleveland, Ohio.

15. Plaintiff **Kenny Phillips ("Phillips")** is 35 years old. He currently lives in Cleveland, Ohio.

16. Defendant Police Officer **Daniel Lentz ("Lentz")**, Defendant Police Officer **Michael Keane ("Keane")** and Defendant Detective **Carl Hartman ("Hartman")** were, at all times relevant to the allegations made in this complaint, duly-appointed police officers employed by the City of Cleveland, acting within the scope of their employment for the Defendant City and the CDP and under the color of state law. They are sued in their individual capacities.

17. Defendant **Cuyahoga County** ("**County**") is a governmental entity in the State of Ohio, duly organized under the laws of the State of Ohio, residing in the Northern District of Ohio, acting under the color of law. Defendant County is a "person" under 42 U.S.C. § 1983. Defendant County is the employer and principal of William Mason, Christopher Wagner, and Brian Deckert, who prosecuted Plaintiffs Sutton and Phillips, and is responsible for the policies, practices, and customs of the County and Prosecutor's Office.

## FACTS

*Plaintiffs are Arrested After Witnessing a Drive By Shooting*

18. On the evening of May 28, 2006, friends Michael Sutton, Kenny Phillips, Deante Creel, and Akeem Tidmore were celebrating Phillips' birthday, as well as Sutton's high school graduation and acceptance into college. It was Sutton's prom weekend.

19. That night, they were riding in Sutton's new car, a graduation gift from his parents. Sutton had just picked up the car that day from the repair shop, where it had received mechanical repairs and brake work, as well as a new sound system and fancy wheels.

20. After going to a teen night club, Moda, they went to the Shell gas station on 55th Street and Woodland Avenue, before heading home around 2:30 a.m. The group was driving down Woodland Avenue when they saw a gold vehicle pull up alongside a black Lincoln in front

of them and start firing into the Lincoln. The gold vehicle then sped away at approximately 100 miles per hour.

21.     At the time of this drive by shooting, City of Cleveland police officer John Lundy, former Officer Greg Jones, and Defendant Officers Daniel Lentz and Michael Keane, were on duty nearby. They had all planted themselves at the Shell gas station at 55th Street and Woodland Avenue. There was usually a large crowd when the club let out, so they would sit there to monitor the crowd in case there were issues. Lentz and Keane were assigned to one cruiser and Jones and Lundy were in the other.

22.     While still at the gas station, the officers heard the gunshots from the drive by shooting. However, the officers were not able to see the shots from their vantage point.

23.     Former Officer Jones radioed "shots fired" and the officers began a pursuit.

24.     Jones and Lundy attempted to follow the gold vehicle, but it was too fast and they were not able to catch up to it. Meanwhile, Defendants Lentz and Keane pursued Sutton's Chevrolet.

25.     Sutton slowed down to allow the police to pass, expecting them to follow the gold vehicle. When he realized the police cruiser behind him, containing Lentz and Keane, was trying to pull him over, he briefly panicked and sped up before turning right on 65th Street and pulling over.

26.     Defendant Lentz's entire pursuit of Sutton's vehicle lasted for less than thirty seconds. After Sutton pulled over, he did not attempt to flee and Defendant Keane apprehended him immediately. Sutton told the officers that "that car was shooting at us. We didn't do anything. That car was shooting at us."

27.     However, the other three occupants, Phillips, Creel, and Tidmore, fearful of the police, panicked and attempted to flee on foot. All three were captured within minutes.

28.     Defendant Lentz captured Phillips and Creel.

29.     Former Officer Jones and Officer Lundy, who had come back to assist Lentz and Keane after the gold vehicle got away, captured Tidmore.

30.     Sutton, Phillips, Creel, and Tidmore were all placed under arrest.

*No Evidence Ties Plaintiffs to the Shooting*

31.     After the four were arrested, the area was sealed off as a crime scene and multiple officers searched for hours, but they found no guns, no shell casings, no bullets, and no physical evidence connecting any of the four teens to the drive by shooting.

32.     Sutton, Phillips, Creel, and Tidmore were tested for gunshot residue ("GSR"), and the only positive result was for a small amount of the substance on Phillips' left hand, however Phillips is right-handed. Such a small amount could have been the result of contamination, including contamination from riding in a police cruiser or from the recent brake work on the car.

33.     The victims of the shooting were injured, some permanently, but they survived. None of them saw the shots come from Sutton's car.

*Defendants Lentz and Keane Fabricate Evidence*

34.     Lacking any evidence that actually tied Plaintiffs Sutton and Phillips or Creel and Tidmore to the shooting, Defendants Lentz and Keane individually, jointly, and in conspiracy with each other, agreed to unlawfully fabricate evidence to justify the arrest.

35.     In the field report and in their interviews with Defendant Detective Carl Hartman, the investigating detective, Lentz and/or Keane knowingly or recklessly made fabricated statements, including that:

    a. Lentz and Keane were already following Sutton's vehicle before any shots were fired, because the vehicle was "swerving recklessly" and "cut off several other vehicles" before it "peeled its tire and spun around in the opposite direction;"

    b. Lentz and Keane "observed and heard gunfire coming from" Sutton's vehicle;

    c. When Creel, Phillips, and Tidmore fled the vehicle after it was pulled over, Creel and Phillips "were observed carrying weapons;"

    d. As Lentz followed them, "multiple gun shots lit up the back yard;"

    e. Lentz believed "that he was being fired upon by the suspects."

36.    In making these fabricated statements, Defendants Lentz and Keane sought to establish that the vehicle and its occupants were dangerous and up to no good, that they had personally perceived the shots coming from Sutton's vehicle, that they saw Phillips and Creel with weapons in their hands, and that Phillips and Creel fired said weapons again, during the foot pursuit, at Defendant Lentz.

37.    These fabricated statements were the only evidence that tied Sutton and Phillips to the drive by shooting of the Lincoln. These fabricated statements were also the only evidence that there had been any gunshots after the foot pursuit started or that anyone had shot at Defendant Lentz.

38.    In the absence of Defendant Lentz's and Defendant Keane's fabricated evidence, there was no probable cause to support the prosecution of Plaintiffs.

39.    Defendants Lentz and Keane failed to exercise the due care they owed to Plaintiffs and their actions were malicious, in bad faith, willful, wanton, and/or reckless.

40.    Defendants Lentz and Keane knowingly deprived, conspired to deprive, and/or attempted to deprive Plaintiffs of a constitutional right when they fabricated this evidence.

*Plaintiffs are Prosecuted Based on the Evidence Fabricated by Defendants Lentz and Keane*

41.    Because Defendants Lentz and Keane fabricated evidence against them, Plaintiffs Sutton and Phillips were charged with attempted murder, felonious assault with a deadly weapon, and felonious assault causing seriously physical harm of the occupants of the black

Lincoln, as well as inducing panic. Phillips was also charged with felonious assault and attempted felonious assault on a peace officer, based on the fabricated shooting at Defendant Lentz. Sutton was also charged with failure to comply with police orders.

42.     These charges, as well as the entire prosecution and ultimate convictions of Plaintiffs Sutton and Phillips, were the result of Lentz's and Keane's fabricated evidence. In this way, Defendants Lentz and Keane instigated, influenced, or participated in the decision to prosecute Plaintiffs.

43.     Plaintiffs Sutton and Phillips, as well as Creel and Tidmore, were indicted on these charges on June 8, 2006. They were all arraigned on June 22, 2006, and all four pled not guilty.

44.     Plaintiffs fiercely and steadfastly maintained their innocence throughout their arrest, pretrial detention, trial, and imprisonment, rejecting plea offers.

*Exculpatory Evidence is Suppressed by Defendant Hartman*

45.     Officer Lundy and former Officer Jones had not written police reports and Defendant Detective Hartman had not bothered to interview them during his investigation, instead only interviewing Defendants Lentz and Keane. However, prior to trial, officers Lundy and Jones were subpoenaed to court and they both spoke with Detective Hartman for the first time. They were "dumbfounded" to hear for the first time that the field report claimed that the officers had been shot at during the foot pursuit. They told Defendant Hartman "Nobody shot at us."

46.     The exculpatory value of this evidence was apparent. Their testimony would not only provide evidence that Plaintiff Phillips never shot at Defendant Lentz at all but would have significantly undermined the credibility of Defendants Lentz and Keane.

47.     Defendant Hartman told Lundy and Jones "hold on," and said that he would talk to the prosecutor. Hartman left and when he returned, he told Lundy and Jones that they could leave. Upon information and belief, Defendant Hartman suppressed this evidence and other evidence contradicting Lentz and Keane's versions of events. Upon information and belief, Defendant Hartman either never spoke to the prosecutor, or he spoke to prosecutor but said Lundy and Jones didn't know anything about what happened to get the prosecutor to dismiss Lundy and Jones as witnesses. He did not tell the prosecutor that Lundy and Jones' testimony or other evidence would directly contradict the statements of Defendant Lentz and Keane.

48.     Defendant Hartman failed to exercise the due care he owed to Plaintiffs and his actions were malicious, in bad faith, willful, wanton, and/or reckless.

49.     Defendant Hartman knowingly deprived, conspired to deprive, and/or attempted to deprive Plaintiffs of a constitutional right when he suppressed this evidence.

*Exculpatory Evidence is Suppressed by Prosecutors in Compliance with County Policy*

50.     Alternatively, Defendant Hartman did tell Cuyahoga County prosecutors William Mason, Christopher Wagner, and Brian Deckert what Officer Lundy and former Officer Jones told him about what happened that night, and it was Mason, Wagner, and/or Deckert, following longstanding, official Cuyahoga County Prosecutors' Office policy, that suppressed this evidence.

51.     Defendant Hartman and Cuyahoga County prosecutors Mason, Wagner, and Deckert individually, jointly, and in conspiracy with each other agreed to unlawfully suppress the exculpatory statements of Officer Lundy and former Officer Jones and other exculpatory evidence in order to secure the convictions of Plaintiffs. In furtherance of this shared objective, Mason, Wagner, and Deckert withheld this evidence from Plaintiffs' counsel and dismissed

Officer Lundy and former Officer Jones as witnesses, and Defendant Hartman told Lundy and Jones to leave to prevent them from disclosing their exculpatory statements.

52.     Defendant Hartman failed to exercise the due care he owed to Plaintiffs and his actions were malicious, in bad faith, willful, wanton, and/or reckless.

53.     Defendant Hartman knowingly deprived, conspired to deprive, and/or attempted to deprive Plaintiffs of a constitutional right when he suppressed this evidence.

*Plaintiffs are Convicted Based on Fabricated Evidence and*
*Without the Benefit of Exculpatory Evidence*

54.     As a result of this suppression, the exculpatory eye-witness accounts of Officer Lundy and former Officer Jones were withheld from Plaintiffs and their counsel at trial. Defendants Lentz and Keane both testified falsely at trial, consistently with the evidence they had fabricated. Officer Lundy did not testify. Former Officer Jones ultimately did testify, but was not asked about anything that would give him the opportunity to contradict Defendant Lentz's fabricated evidence. As a result, the jury never heard Lundy and Jones' version of events.

55.     At the end of the trial, based on the fabricated evidence of Defendants Lentz and Keane and false testimony of Lentz and Keane and without the benefit of exculpatory evidence, Plaintiffs were both convicted. A reasonable likelihood exists that the material false evidence affected the decision of the jury.

56.     Plaintiff Phillips was convicted of attempted murder, felonious assault, and attempted felonious assault of the victims in the Lincoln, felonious assault and attempted felonious assault of Defendant Lentz, and inducing panic, as well as gun specifications. He was sentenced to 92 years of imprisonment.

57.     Plaintiff Sutton was found guilty of attempted murder, felonious assault, and attempted felonious assault of the victims in the Lincoln, and inducing panic, as well as failure to

comply with police orders. He was sentenced to 46 and a half years of imprisonment and five years of post-release control.

*Plaintiffs are Exonerated After Exculpatory Evidence Finally Comes to Light*

58.      The exculpatory accounts of Officer Lundy and former Officer Jones were finally brought to light in 2015, after the Wrongful Conviction Unit of the Ohio Public Defender's Office interviewed Jones and Lundy.

59.      According to Lundy and Jones, not only were there no gun shots after the foot pursuit began and thus no one had ever shot at any of the officers, but Defendants Lentz and Keane could not have seen shots fired from Sutton's car into the victims' car in the first place because they were still in the parking lot of the gas station with Lundy and Jones when they all heard the shots. This also meant that Lentz and Keane could not have already been following behind Sutton's car when the shots were fired. Lundy and Jones were surprised that Lentz had claimed otherwise.

60.      These statements directly contradicted the accounts of Defendant Officers Lentz and Keane and significantly undermined the credibility of Lentz and Keane—who constituted the *only* evidence tying Plaintiffs to the shooting.

61.      Based on this evidence, Plaintiffs filed motions for a new trial.

62.      On June 3, 2019, the trial court denied their motions.

63.      However, on March 18, 2021, the Eighth District Court of Appeals reversed, finding that exculpatory evidence was withheld in violation their rights under *Brady*, and that as a result, they had been denied a fair trial. Plaintiffs' convictions were vacated, and the case was remanded for a new trial.

64.      Plaintiffs' new trial began on September 19, 2022, and on September 27, 2022, Plaintiff Michael Sutton and Plaintiff Kenny Phillips a jury found them not guilty on all counts.

11

65.     On September 27, 2022, Plaintiffs Michael Sutton and Kenny Phillips were finally completely free from custody and bond conditions and were exonerated for crimes they did not commit.

*Defendant Cuyahoga County's Policies and Practices*

66.     The prosecutorial misconduct described in this Complaint was undertaken pursuant to the policies and practices of the Defendant County.

67.     Defendant Cuyahoga County maintained an official policy that permitted the suppression of certain exculpatory evidence. Pursuant to this policy, Cuyahoga County prosecutors regularly suppressed exculpatory evidence, in violation of the constitutional rights of criminal defendants in Cuyahoga County.

68.     This policy was expressly outlined in a letter from County Prosecutor John T. Corrigan, in which he defined the legal rights of defense counsel to evidence. Corrigan was elected as Cuyahoga County prosecutor in 1956 and served in that position until 1991. In that position, he served as final policymaker for Defendant Cuyahoga County. In his letter, he explained, on behalf of Defendant Cuyahoga County, that while defense counsel was entitled to "evidence favorable to the defendant," that there was an exception for "reports" made by "police departments" and "statements made by witnesses." This official policy thus permitted the suppression of otherwise exculpatory evidence, if it fit into these exceptions.

69.     This official policy remains in place. It continued after Corrigan's tenure, into the 1990s, the 2000s, when Cuyahoga County prosecutors Mason, Wagner, and/or Deckert withheld exculpatory evidence in violation of Plaintiffs' rights, and beyond.

70.     In accordance with this official policy permitting the suppression of exculpatory evidence in Cuyahoga County, Cuyahoga County prosecutors regularly withheld and/or suppressed exculpatory evidence and there is a custom of tolerance of such unconstitutional

conduct. This was a widespread, clear, and persistent pattern and practice of the attorneys in the Cuyahoga County prosecutor's office and is well-documented as far back as the 1970s, continuing through the prosecution of Plaintiffs Sutton and Phillips and beyond.

71.     This ongoing pattern demonstrating this policy and practice is evident in, *inter alia*, the following cases prosecuted by Defendant Cuyahoga County, wherein County prosecutors withheld exculpatory evidence, particularly evidence in the form of police reports and/witness statements:

a.  In the 1975 prosecution of Isaiah Andrews for the murder of his wife, Cuyahoga County prosecutors had exculpatory evidence in their file that they withheld, including police reports that contained evidence of another suspect, evidence of physical evidence connecting that suspect to the murder, and evidence that that the bloody palm print found at the scene did not match Andrews. However, the Cuyahoga County prosecutors prosecuting the case did not disclose those police reports to defense counsel, and as a result, Andrews was wrongfully convicted.

b.  In the 1987 trial of Ronald Larkins for the murder of a pawnshop owner, Cuyahoga County prosecutors withheld exculpatory witness statements, including statements with descriptions of the perpetrator that did not match Larkins, and other impeachment evidence. Because "exculpatory evidence in the prosecution's possession… was never turned over to Larkins" he was granted a new trial. *State v. Larkins*, 8th Dist. Cuyahoga No. 82325, 2003-Ohio-5928.

c.  Reginald Jells was also convicted of murder in 1987 and was granted a writ of habeas corpus in 2008, based on the suppression of evidence by Cuyahoga County prosecutors. Here, the evidence suppressed by the prosecutors was

exculpatory because it was material not to the murder, but to whether the murder also included a kidnapping because this went to the aggravating factors considering in the death sentence he had received. This evidence included witness statements indicating that the victim voluntarily got into Jells' van and impeachment evidence regarding a witness who claimed to have seen Jells abduct the victim (while she positively identified Jells as the assailant at trial, in the suppressed report, she admitted that "she couldn't see the male well"). *Jells v. Mitchell*, 538 F.3d 478 (Table) (6th Cir. 2008).

d.  Likewise, in 1987, George Seiber was prosecuted for the robbery of drugs out of a pharmacy and for shooting at a police officer responding to the crime. The entire case rested on two key witnesses, Edward Parker and Detective Scharf, the officer who had been shot at. However, the prosecutors withheld an exculpatory police report that significantly impeached the testimony of Scharf and withheld the fact that one of the prosecutors had made promises to a witness in return for his testimony. *Seiber v. Coyle*, 156 F.3d 1232 (Table) (6th Cir. 1998). Seiber was granted a writ of habeas corpus based on the suppression of this evidence in 1998.

e.  In 1988, Joe D'Ambrosio was convicted of murder. He was granted a writ of habeas corpus after the court found that the Cuyahoga County prosecutors suppressed 13 different pieces of evidence including police reports, witness statements, and other evidence, that either contradicted the testimony of the only eyewitness and or constituted evidence of an alternative suspect. *D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008).

f.  In 1989, Thomas Michael Keenan was convicted of two counts of aggravated murder and one count each of aggravated burglary and kidnapping, stemming from the same crimes for which D'Ambrosio had been convicted. The Ohio Supreme Court reversed this conviction (on non-*Brady* grounds), and Mr. Keenan was re-tried, re-convicted, and re-sentenced in 1996. However, Cuyahoga County prosecutors suppressed exculpatory evidence during both Keenan's 1989 trial and his 1996 retrial. This evidence included facts inculpating an alternative suspect, a recording from an informant naming other possible suspects, and numerous police reports detailing statements from witnesses and crime scene detectives that undermined the State's case. *Keenan v. Bagley*, No. 1:01 CV 2139, 2012 WL 1424751 (N.D. Ohio Apr. 24, 2012).

g.  In 1994, Anthony Lemons was convicted of murder and attempted murder. However, in 2013, he was granted a new trial after the court found that Cuyahoga County prosecutors suppressed exculpatory evidence in their possession at trial. In this case, they suppressed police reports that impeached the testimony of Jude Adamcik, an eyewitness and victim of the attempted murder. These suppressed reports demonstrated that Adamcik failed to identify Lemons in the initial photo lineup, and that police investigated her claim that the shoes she identified in a much  later lineup were the same shoes worn during the murder and determined this was impossible because the shoes were not manufactured until well after the murder.

h.  In 2001, Octavious Hood was convicted of attempted gross sexual imposition. However, the Cuyahoga County prosecutors suppressed the police report and the

written statement of the victim, denying his defense from being able to cross examine the victim based on her earlier statements. The first statement made by the victim lacked any mention of direct sexual contact and indicated that he desisted in his efforts after she declined, so there was a reasonable probability that if this evidence had been available to the defense, that he would not have been convicted. *State v. Hood*, 8th Dist. Cuyahoga No. 80294, 2002-Ohio-4081.

i. In 2004, Vernon Brown was wrongfully convicted of two murders and sentenced to death. Cuyahoga County prosecutors suppressed exculpatory police reports in their possession that indicated that someone other than the Brown had actually claimed responsibility for the murders. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858. Brown was granted a new trial on the basis of this suppression.

72.     The fact that this ongoing pattern demonstrating this policy and practice continued into the 2000s is further demonstrated by other actions taken by Cuyahoga County prosecutors, in which the prosecutors withheld evidence from production in public records requests, based on the same County policy exempting police reports and witness statements from disclosure despite being otherwise exculpatory. This is evident in, *inter alia*, the following cases prosecuted by Defendant Cuyahoga County wherein prosecutors withheld exculpatory evidence after trial:

a. Following Ronald Larkins' conviction, he sought records through a writ of mandamus. This dispute went up to the Supreme Court of Ohio, which held that he was not entitled to the documents requested because they were "exempt from disclosure based upon the work product exception of R.C. 149.43(A)(2)(c)." *State*

*ex rel Steckman v. Jackson*, 70 Ohio St.3d 420 (1994). Following *Steckman*, "information assembled by law enforcement officials… is work product" and "excepted from required release" "[e]xcept as required by Crim.R. 16," which requires the disclosure of evidence favorable to the defendant. Thus, *Steckman* only exempts disclosure of documents that are *not* exculpatory. If documents *are* exculpatory, *Steckman* does not apply. Thus, when the County used *Steckman* as a justification not to disclose documents in a public records request, that meant that the prosecutor responding to the request made a determination as to whether County policy required disclosure of the documents as exculpatory. However, because the unconstitutional County policy permitted withholding exculpatory police reports and witness statements, prosecutors responding to records requests would withhold them again when responding to public records requests. In Larkins' case, he only obtained the records after someone else requested them from the police department in 1999. Even though the state had refused to turn them over under *Steckman*, necessarily requiring that they were not exculpatory, the undisclosed records *were* in fact exculpatory. With the benefit of that previously suppressed evidence, Larkins' indictment was dismissed. In dismissing the indictment rather than granting a new trial, the court noted that Larkins could not have a fair trial because the passage of time had so greatly prejudiced him where "the defendant ha[d] been trying at least since 1994 to obtain the exculpatory evidence in possession of the State" and that "the State [had] purposely secret[ed] exculpatory evidence from" him and then "actively s[ought] to conceal that evidence for a period of years."  Thus, the same policy that was in

effect in the 1980s that caused Cuyahoga County prosecutors to suppress exculpatory evidence in Larkins' case also caused the suppression of the same records in the 1990s, in response to Larkins' public records request.

b. Likewise, Charles Jackson was wrongfully convicted of murder in 1991, and after his conviction he sought public records as well. He sent requests to the police department and the Cuyahoga County prosecutor's office. A Cuyahoga County prosecutor, Barbara Marburger, responded to the public records request on behalf of the County in 2016 and provided records, but selectively redacted them. However, when Jackson later obtained unredacted versions of the records from the City, they revealed that Marburger's redactions suppressed exculpatory evidence. With the benefit of these exculpatory reports, Jackson was finally granted a new trial. The County continued to insist that Marburger was merely following *Steckman*. However, because *Steckman* does not apply to exculpatory evidence, it was not *Steckman* but Cuyahoga County policy that Marburger followed when she selectively redacted exculpatory evidence from police reports.

c. The East Cleveland 3, Derrick Wheatt, Laurese Glover, and Eugene Johnson, were convicted of murder in 1996. They likewise sought public records after their appeals were exhausted. In this case, the police were willing to turn over the file, but the Cuyahoga County prosecutor's office sent a letter to the City stating that the file was "not a public record" pursuant to *Steckman* and that turning it over would violate the law. The County directed East Cleveland to turn the file over to it, along with all copies. Nonetheless, in 2013, East Cleveland disclosed the file in response to an OIP records request. Once again, the suppressed evidence was not

properly withheld under *Steckman*, because it was in fact exculpatory. All three

relied on this newly discovered exculpatory evidence to secure new trials. As

noted by the Northern District of Ohio, the County's "only apparent interest" in

interfering with what East Cleveland did with its own records "was to defeat

review of the facts supporting the prosecution." *Wheatt v. City of East Cleveland*,

Nos. 1:17-cv-377, 1:17-cv-611, 2017 WL 5187780 (N.D. Ohio Nov. 9, 2017).

73.     While these particular actions were not *Brady* violations themselves, there was an

initial *Brady* violation at trial, and a second suppression in response to a public records request

after trial. This demonstrates that the County policy, by which certain exculpatory evidence is

excepted from disclosure, continued. This further evidences the County policy which permits the

exclusion of police reports and witness statements from the evidence turned over by prosecutors.

74.     Defendant County and officials within the Cuyahoga County prosecutor's office

failed to act to remedy the abuses described in the preceding paragraphs, despite actual

knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices

described above and caused the violation of Plaintiffs' rights.

75.     The policies and practices described in this Complaint were consciously approved

by Defendant Cuyahoga County policymakers who were deliberately indifferent to the violations

of constitutional rights described herein.

76.     The policies and practices of the Defendant County were the moving force behind

the misconduct described in this Complaint and the violation of Plaintiffs' rights. The

widespread practices were so well settled as to constitute *de facto* policy in the Cuyahoga County

prosecutor's office, and they were allowed to exist because municipal policymakers with

authority over these practices exhibited deliberate indifference to the problems.

77.     The Defendant County is liable because the violation of Plaintiffs' rights as described in this Complaint was caused by the policies, practices, customs, and/or actions of Defendant County and its policymakers.

78.     The constitutional violations that caused Plaintiff Sutton's and Plaintiff Phillips' wrongful convictions were not isolated events. To the contrary, the constitutional violations resulted from Defendant County's policies and practices of pursuing wrongful convictions by withholding exculpatory evidence.

79.     Consistent with the municipal policy and practice described herein, prosecutors William Mason, Christopher Wagner, and Brian Deckert suppressed evidence at trial and failed to disclose that evidence to Plaintiffs' defense counsel.

80.     As a direct and proximate result of Defendant County's policy and practice and the actions of Cuyahoga County prosecutors Mason, Wagner, and Deckert, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth in this Complaint.

*Sutton's and Phillips' Injuries*

81.     Plaintiff Michael Sutton spent fifteen years behind bars for a crime he did not commit. He was arrested at the age of eighteen and exited prison in his mid-thirties, having spent his entire adult life incarcerated.

82.     Plaintiff Kenny Phillips spent fifteen years behind bars for a crime he did not commit. He was arrested on his eighteenth birthday and exited prison in his mid-thirties, having spent his entire adult life incarcerated.

83.     Their long years of wrongful imprisonment deprived them of all things in life so many of us take for granted.

84.     The Defendants robbed Sutton and Phillips of their hopes and dreams for their young lives and their futures. The Defendants destroyed their lives without any warning.

85.     They were deprived of the opportunity to go to college, to find a vocation, or to start a family. Sutton and Phillips were both deprived of the opportunity to build a home and family life, and to enjoy the basic human experiences and pleasures which are fundamental to liberty and freedom.

86.     Sutton had a scholarship to attend the University of Akron and lost the opportunity to play football and basketball in college.

87.     Sutton and Phillips were deprived of the opportunity to maintain meaningful relationships with their family and friends.

88.     They were deprived of the ability to share holidays, births, funerals, weddings, and other important life milestones with their loved ones. Sutton lost all four of his grandparents while he was in prison. His grandparents never got to see him as a free man.

89.     Sutton and Phillips must now attempt to make lives for themselves without the benefit of years of life experiences and with the burden of their prior imprisonment.

90.     As a result of Defendants' misconduct, Sutton and Phillips have suffered various physical, mental, and emotional injuries in prison and continue to suffer today.

91.     In addition to the severe trauma of wrongful imprisonment and the loss of liberty, Defendants' misconduct continues to cause Sutton and Phillips extreme physical and psychological pain and suffering, including anxiety, emotional distress, and other psychic injuries.

92.     As a result of the foregoing, Plaintiffs suffered tremendous damage, including physical and emotional damages, lost wages, lost future earning capacity, costs and other damages all proximately caused by Defendants' misconduct.

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 — Fourth and Fourteenth Amendments:*
*Fabrication of False Evidence*

93.     All of the foregoing paragraphs are incorporated as though fully set forth here.

94.     In the manner described more fully above, Defendants Lentz and Keane individually, jointly, and in conspiracy with each other, fabricated evidence, including without limitation, fabricated police reports, fabricated statements, and fabricated testimony offered at Plaintiffs' trial, in order to justify the arrest of Plaintiffs and in order to secure their conviction.

95.     Defendants Lentz and Keane knowingly or recklessly made false statements and fabricated evidence, and a reasonable likelihood exists that the false evidence affected the decision of the jury. Defendants Lentz's and Keane's actions violated Plaintiffs' right to due process guaranteed by the U.S. Constitution.

96.     Defendants Lentz and Keane were acting under color of law and within the scope of their employment when they took these actions.

97.     Defendants Lentz's and Keane's misconduct directly resulted in the unjust criminal conviction of Plaintiffs, thereby denying them their constitutional rights to a fair trial guaranteed by the U.S. Constitution. This misconduct caused Plaintiffs to be wrongfully convicted of crimes of which they are innocent.

98.     As a direct and proximate result of Defendants Lentz's and Keane's actions, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary damages and other grievous and continuing injuries and damages as set forth above.

99.     Defendants are jointly and severally liable for this conduct.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 — Fourth and Fourteenth Amendments:*
*Malicious Prosecution*

100.    All of the foregoing paragraphs are incorporated as though fully set forth here.

101.    In the manner described more fully above, Defendants Lentz, Keane, and Harman individually, jointly, and in conspiracy with each other, instigated, influenced, or participated in the decision to prosecute Plaintiffs, and there was no probable cause for the criminal prosecution. As a consequence of the criminal prosecution, Plaintiffs suffered a deprivation of liberty apart from their initial seizure. Plaintiffs' criminal prosecution was ultimately terminated in their favor.

102.    Defendants Lentz,Keane, and Hartman knowingly or recklessly made false statements and fabricated evidence, and those false statements and fabricated evidence were material to the prosecution of the Plaintiffs. In the absence of these false statements and fabricated evidence, the Plaintiffs would not have been indicted, would not have been prosecuted, and would not have been convicted.

103.    In the manner described more fully above, Defendants Lentz's, Keane's, and Hartman's misconduct denied the Plaintiffs their constitutional rights to procedural due process under the Fourteenth Amendment and rights under the Fourth Amendment to be free from continued detention without probable cause. Absent this misconduct, there would have been no probable cause for Plaintiffs' continued detention, and the prosecution of Plaintiff could not and would not have been pursued. This misconduct caused Plaintiffs to be wrongfully convicted of crimes of which they are innocent.

104.    Defendants Lentz, Keane, and Hartman were acting under color of law and within the scope of their employment when they took these actions.

105.    As a direct and proximate result of the Defendants' actions, Plaintiffs'

constitutional rights were violated and they suffered injuries and damages, including but not

limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary

losses, and other grievous and continuing injuries and damages as set forth above.

106.    Defendants are jointly and severally liable for this conduct.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 — Fourteenth Amendment:*
*Brady Violations*

107.    All of the foregoing paragraphs are incorporated as though fully set forth here.

108.    In the manner described more fully above, Defendants Lentz, Keane, and

Hartman deliberately failed to disclose and otherwise withheld and/or suppressed exculpatory

information and material from the prosecution, Plaintiffs, and Plaintiffs' defense counsel,

including evidence upon which State witnesses could be seriously impeached.

109.    Defendants Lentz, Keane, and Hartman deprived the Plaintiffs of their

constitutional right not to be deprived of liberty without due process of law.

110.    Defendants Lentz, Keane, and Hartman were acting under color of law and within

the scope of their employment when they took these actions.

111.    The Defendants' misconduct directly resulted in the unjust criminal convictions of

the Plaintiffs, thereby denying them their constitutional right to a fair trial guaranteed by the U.S.

Constitution. By their actions, Defendants Lentz, Keane, and Hartman thereby misled and

misdirected the criminal prosecution of the Plaintiffs. Absent this misconduct, the prosecution of

the Plaintiffs could not and would not have been pursued, and there is a reasonable probability

that the suppressed evidence would have produced a different verdict and Plaintiffs would not

have been convicted.

112.     As a direct and proximate result of Defendants Lentz, Keane and Hartman's actions, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary losses, and other grievous and continuing injuries and damages as set forth above.

113.     Defendants are jointly and severally liable for this conduct.

### FOURTH CLAIM FOR RELIEF
*Ohio State Law — Willful, Wanton, and/or Reckless Breach of Duty*

114.     All of the foregoing paragraphs are incorporated as though fully set forth here.

115.     Defendant Officers Lentz, Keane, and Hartman breached their duties, failed to exercise due care and acted with malicious purpose, in bad faith, and/or in a wanton or reckless manner, and engaged in willful, wanton, and/or reckless conduct, while engaged in police functions and activities, including but not limited to *Brady* violations, the fabrication of evidence, and malicious prosecution, giving rise to constitutional violations as described in this Complaint.

116.     As a direct and proximate result of Defendants Lentz's, Keane's, and Hartman's willful, wanton, and/or reckless conduct, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary losses, and other grievous and continuing injuries and damages as set forth above.

117.     Defendants are jointly and severally liable for this conduct.

### FIFTH CLAIM FOR RELIEF
*O.R.C. 2307.60(A)(1) — Person Injured by Criminal Act has Civil Remedy*

118.     All of the foregoing paragraphs are incorporated as though fully set forth here.

119.     Defendants Lentz, Keane, and Hartman, in the manner described more fully above, including but not limited to, knowingly deprived or conspired to deprived or attempted to deprive Plaintiffs of a constitutional right. They did so in violation of R.C. § 2921.45(A), a misdemeanor of the first degree.

120.     As a direct and proximate result of these criminal acts, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary losses, and other grievous and continuing injuries and damages as set forth above.

121.     Because they were injured by a criminal act, Plaintiffs are entitled to recover damages, pursuant to R.C. § 2307.60(A)(1).

122.     Defendants are jointly and severally liable for this conduct.

### SIXTH CLAIM FOR RELIEF
*Ohio State Law — Malicious Prosecution*

123.     All of the foregoing paragraphs are incorporated as though fully set forth here.

124.     Defendants Lentz and Keane individually, jointly, and in conspiracy with each other instituted or continued the prosecution of Plaintiffs maliciously when they knowingly or recklessly provided false evidence despite the lack of probable cause to support their prosecution. Plaintiffs' criminal prosecution was ultimately terminated in their favor.

125.     Defendants Lentz and Keane committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as police officers for the Cleveland Division of Police.

126.     As a direct and proximate result of Defendants Lentz's and Keane's willful, wanton, and/or reckless conduct, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury,

emotional pain and suffering, pecuniary losses, and other grievous and continuing injuries and damages as set forth above.

127.    Defendants are jointly and severally liable for this conduct.

### SEVENTH CLAIM FOR RELIEF
*Ohio State Law — Abuse of Process*

128.    In the alternative, there was probable cause to support the prosecution of Plaintiffs.

129.    However, despite being set in motion in proper form and with probable cause, that proceeding was perverted to attempt to accomplish an ulterior purpose for which it was not designed when Defendants Lentz and Keane conspired to knowingly or recklessly provided false evidence to secure the convictions of Plaintiffs.

130.    Direct damage has resulted from this wrongful use of process. As a direct and proximate result of Defendants Lentz's and Keane's willful, wanton, and/or reckless conduct, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, pecuniary losses, and other grievous and continuing injuries and damages as set forth above.

131.    Defendants are jointly and severally liable for this conduct.

### EIGHTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 — Monell Policy and Practice Claim*
*Against Defendant Cuyahoga County*

132.    All of the foregoing paragraphs are incorporated as though fully set forth here.

133.    Defendant Cuyahoga County is liable for the violations of Plaintiffs' constitutional rights as described in this Complaint by virtue of its official policies and practices.

134.    The actions of the Cuyahoga County prosecutors Mason, Wagner, and Deckert, were undertaken pursuant to policies, practices, and customs of the Defendant County and the

Cuyahoga County prosecutor's office, which were established by, approved, encouraged, and/or ratified by policymakers for the Defendant County and the prosecutor's office with final policymaking authority.

135.    The policies, practices, and customs described in this Complaint were maintained and implemented by Defendant Cuyahoga County with deliberate indifference to Plaintiffs' constitutional rights and were a moving force behind the violations of those rights.

136.    This includes the official policy of permitting an exception to the requirement to disclose exculpatory evidence, favorable to the criminal defendant, for certain types of evidence, including police reports and witness statements. This official policy began in the 1970s and continues to the present day.

137.    Pursuant to this policy, Cuyahoga County prosecutors regularly suppressed exculpatory evidence, in violation of the constitutional rights of criminal defendants in Cuyahoga County.

138.    These widespread practices were so well-settled as to constitute *de facto* policy in the Cuyahoga County prosecutor's office, and were allowed to exist because municipal policymakers with authority over the conduct exhibited deliberate indifference to the problems.

139.    As a direct and proximate result of the Defendant Cuyahoga County's actions and inactions, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

140.    Defendants are jointly and severally liable for this conduct.

**NINTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 — Civil Conspiracy Against Defendant Hartman*
*and Defendant Cuyahoga County*

141.     Defendant Hartman and Cuyahoga County prosecutors William Mason, Christopher Wagner, and Brian Deckert, acting on behalf of Defendant Cuyahoga County and pursuant to the longstanding and official policies and practices of Defendant County, conspired to injure Plaintiffs by unlawful action.

142.     Defendant Hartman, Mason, Wagner, and Deckert agreed to suppress, withhold, and hide the exculpatory statements of Officer Lundy and former Officer Jones, in order to achieve a shared objective – securing the convictions of Plaintiffs.

143.     Defendant Hartman and Cuyahoga County prosecutors Mason, Wagner, and Deckert committed the following overt acts in furtherance of the conspiracy:

   a.  Mason, Wagner, and Deckert dismissed Officer Lundy and former Officer Jones from testifying;

   b.  Defendant Hartman told Officer Lundy and former Officer Jones to leave;

   c.  Hartman, Mason, Wagner, and Deckert withheld the existence of the exculpatory statements and evidence from Plaintiffs' defense counsel.

144.     As a direct and proximate result of Defendant Hartman and Defendant Cuyahoga County's actions and inactions, Plaintiffs' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

145.     Defendants are jointly and severally liable for this conduct.

### PRAYER FOR RELIEF

Plaintiffs Michael Sutton and Kenny Phillips respectfully request that this Court enter judgment in their favor and against Defendants Officer Daniel Lentz, Officer Michael Keane, Detective Carl Hartman, and Cuyahoga County, awarding (a) compensatory and consequential

damages, costs, and attorneys' fees (including those pursuant to 42 U.S.C. § 1988) against each Defendant, jointly and severally, along (b) with punitive damages against each of the individual Defendants, as well as (c) any other relief this Court deems appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs Michael Sutton and Kenny Phillips hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

*/s/ Sarah Gelsomino*
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
elizabeth@fggfirm.com

Jacqueline Greene (0092733)
FRIEDMAN GILBERT + GERHARDSTEIN
35 East 7th Street, Suite 201
Cincinnati, OH  45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com

*Counsel for Plaintiffs Michael Sutton and Kenny Phillips*