# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL SUTTON, *et al.*, | ) |
|         Plaintiffs, | ) Civil Case No. 1:23-cv-01878 |
| vs. | ) JUDGE DAVID A. RUIZ |
| DANIEL LENTZ, *et al.*, | ) |
|         Defendants. | ) |

## DEFENDANT CUYAHOGA COUNTY'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Cuyahoga County moves this Court to dismiss Plaintiffs' claims against it. As pleaded, the Complaint fails to state a plausible claim for relief against Cuyahoga County because Ohio law attributes the acts and policies of prosecutors to the State of Ohio. This Motion is further supported by the accompanying Memorandum of Law.

                                                Respectfully submitted,

                                                */s/ Patrick J. Lipaj*
                                                BRENDAN D. HEALY (0081225)
                                                PATRICK J. LIPAJ (0100129)
                                                Assistant Prosecuting Attorneys
                                                Cuyahoga County Prosecutor's Office
                                                The Justice Center, Courts Tower
                                                1200 Ontario Street, 8th Floor
                                                Cleveland, Ohio 44113
                                                Tel: (216) 698-6447
                                                Fax: (216) 443-7602
                                                bhealy@prosecutor.cuyahogacounty.us
                                                plipaj@prosecutor.cuyahogacounty.us

                                                *Attorneys for Defendant Cuyahoga County*

**MEMORANDUM IN SUPPORT**

Plaintiffs bring this lawsuit against Defendant Cuyahoga County (the "County") for the alleged actions and policies of criminal prosecutors. But Plaintiffs name the wrong defendant. Ohio law treats prosecutors as state actors when prosecuting criminal charges and making policy related to criminal prosecutions. In other words, the County cannot be liable even if all factual allegations in the Complaint are true. Plaintiffs, as a result, cannot state a claim for relief against the County, and this Court should dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    BACKGROUND**

This lawsuit stems from events occurring in 2006. In late May of that year, a drive-by shooter peppered bullets at another car on Cleveland's east side, resulting in gunshot wounds to the heads of two victims. (Doc. #1, Compl. at ¶¶ 18, 20, 33.) Two Cleveland Police officers—Defendants Daniel Lentz and Michael Keane—witnessed the shooting and, after pursuing a fleeing vehicle, arrested Plaintiffs Michael Sutton and Kenny Phillips ("Plaintiffs") in connection with the shooting. (*Id.* at ¶¶ 26-30.)

Because the shooting occurred in Cuyahoga County, the State of Ohio (the "State") acted through the Cuyahoga County Prosecutor's Office ("CCPO") and presented the matter to a grand jury, which indicted Plaintiffs for attempted murder and felonious assault, among other charges. (*Id.* at ¶ 43.) CCPO prosecutors William Mason, Christopher Wagner, and Brian Deckert ("Mason, Wagner, and Deckert") criminally prosecuted the Plaintiffs together in one case before Judge Peter J. Corrigan in the Cuyahoga County Court of Common Pleas. (*Id.* at ¶ 17.)

The case went to a jury trial on May 29, 2007. (*Id.* at ¶¶ 54-55); *see also State of Ohio v. Michael Sutton*, CR-06-481840-D, Cuyahoga County Court of Common Pleas; *State of Ohio v.*

*Kenny Phillips*, CR-06-481840-C, Cuyahoga County Court of Common Pleas.  The jury returned guilty verdicts against both Plaintiffs, and the Court sentenced Plaintiffs to lengthy terms of imprisonment.  (*Id.* at ¶¶ 56-57.)

### A. Sutton and Phillips File for a New Trial

In 2015, the Wrongful Conviction Unit of the Ohio Public Defender's Office uncovered what Plaintiffs describe as "exculpatory" eye-witness accounts from two other Cleveland Police officers—Jones and Lundy—that were allegedly withheld from Plaintiffs' attorneys at trial (the "Disputed Evidence").  (*Id.* at ¶¶ 54, 58.)  In 2018, Plaintiffs moved for a new trial with the help of the Ohio Innocence Project.  (*Id.* at ¶ 61.)  Judge Corrigan denied their motion, finding the Disputed Evidence lacked credibility, and outright rejected any *Brady* violation.  (*Id.* at ¶ 62.)

Ohio's Eighth District Court of Appeals disagreed.  It reversed the denial, vacated Plaintiffs' convictions, and remanded their cases for a new trial, based upon the State's alleged failure to disclose the Disputed Evidence to the defense.  (*Id.* at ¶ 63.)  In September 2022, the State retried the Plaintiffs, and a jury found them not guilty on all counts.  (*Id.* at ¶ 64.)

### B. Sutton and Phillips Sue Cleveland Police Officers and the County

After their release from prison, Plaintiffs filed this lawsuit alleging violations of their constitutional rights during their criminal prosecutions. Since Mason, Wagner, and Deckert enjoy absolute prosecutorial immunity,[1] Plaintiffs attempt to artfully plead claims for *Monell* liability under 42 U.S.C. § 1983 and civil conspiracy against the County.  (*Id.* at ¶¶ 132-145.)

Plaintiffs claim—without any support—the CCPO instituted and maintained a three-decades-long policy that disregarded *Brady v. Maryland* and suppressed exculpatory evidence

---

[1] *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) ("We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law.").

2

during criminal prosecutions. (*Id.* at ¶¶ 66-69.) This policy, Plaintiffs contend, derives from one source: a short passage in a single letter written by former Cuyahoga County Prosecutor John T. Corrigan ("Corrigan") sometime prior to 1975. (*Id.* at ¶¶ 68, 71(a).) Plaintiffs suggest that letter (the "Corrigan Letter")[2] is a silver bullet that not only (i) established an "official policy" for the County and (ii) overtly suppressed exculpatory evidence but also (iii) survived multiple elected prosecuting attorneys over thirty years and (iv) directly caused Plaintiffs' supposed *Brady* violations in 2007. (*Id.* at ¶¶ 66-69, 134-139.)

Plaintiffs' Complaint against the County boils down to a few key allegations. First, Plaintiffs allege that Mason, Wagner, and Deckert withheld the Disputed Evidence during their 2007 trial and that the Disputed Evidence was exculpatory. (*Id.* at ¶¶ 79, 142.) Next, Plaintiffs contend the prosecution's withholding of the Disputed Evidence constitutionally injured them. (*Id.* at ¶ 139.) Crucially, they allege Mason, Wagner, and Deckert acted on behalf of the County when withholding the evidence. (*Id.* at ¶¶ 17, 141.) They also claim the alleged Corrigan Letter allowed the suppression of exculpatory evidence, survived as the CCPO's policy for 30+ years, and was the moving force behind their injury. (*Id.* at ¶¶ 66-70, 76.) Finally, Plaintiffs allege Corrigan acted as a County policymaker when enacting the Corrigan Letter. (*Id.* at ¶ 68.)

The County now moves to dismiss the Complaint pursuant to Rule 12(b)(6) because it fails to state a claim against the County. Specifically, the County moves to dismiss Count Eight (*Monell* claim)[3] and Count Nine (Civil Conspiracy between the County and Cleveland Police Officer Carl

---

[2] Notably, Plaintiffs do not attach this alleged letter to their Complaint, nor do they provide any additional evidence of its existence, contents, or context.

[3] Plaintiffs appear to incorporate the alleged constitutional violations described in Count One (falsification of evidence), Count Two (malicious prosecution), and Count Three (*Brady* violations).

3

Hartman) of the Complaint. The remaining causes of action in the Complaint were not asserted against the County.[4]

## II. LAW AND ARGUMENT

### A. Legal Standard Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Only complaints that state a "plausible" claim for relief can survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. But the court "need not accept" legal conclusions as true. *Christian v. Altaire Pharm., Inc.*, No. 20-6360, 2021 U.S. App. LEXIS 23751, at *3 (6th Cir. Aug. 10, 2021) (quoting *Phila. Indem. Ins. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)). Conclusory allegations or legal conclusions "masquerading as factual allegations will not suffice." *Id*.

Here, Plaintiffs build their Complaint against the County upon a foundation of two faulty legal conclusions. Those two legal conclusions are that: (1) prosecutors act as county (rather than state) agents during criminal prosecutions and (2) prosecuting attorneys make county (rather than state) policy when providing discovery guidelines for criminal prosecutions. Without these two

---

[4] Plaintiffs' civil liability for criminal acts claims set forth in Counts Four and Five cannot be asserted against the County because the County is not a "person" subject to criminal prosecution under R.C. § 2901.01(B)(1)(a). Furthermore, Count Six (Malicious Prosecution under Ohio law) and Count Seven (Abuse of Process under Ohio Law) were asserted against only Defendants Lentz and Keane.

4

bedrock conclusions "masquerading as factual allegations," Plaintiffs' entire Complaint collapses—even if all remaining factual allegations are true.

This Court should reject these legal conclusions. Procedurally, the Court must only accept Plaintiffs' *factual* allegations at this stage. It need not accept legal conclusions like these. More importantly, as detailed below, these legal conclusions misapprehend established law. County prosecutors, as a matter of law, act as arms of the State when prosecuting and making policy related to criminal charges. As a result, the real party in interest here is the State of Ohio—not the County.[5]

### B. This Court Should Dismiss Plaintiffs' *Monell* Claim Because the County is Not Liable for the Alleged Acts and Policies of State Agents

Generally, municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead, they are only liable when an illegal municipal policy or custom causes a plaintiff's constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Sixth Circuit applies a two-part test when determining municipal liability under § 1983. *See Morris v. City of Detroit*, 789 F. App'x 516, 519 (6th Cir. 2019). First, a plaintiff must show that "he suffered the deprivation of a constitutional right . . . [and] that the alleged deprivation occurred at the hands of the actor." *Id*. Second, the plaintiff must show that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Id.* (quoting *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)).

Here, Plaintiffs cannot satisfy either part of the test. Plaintiffs cannot demonstrate *the County* violated Plaintiffs' rights because prosecutors Mason, Wagner, and Deckert did not prosecute for the County; they prosecuted for the State. Likewise, Plaintiffs cannot show the

---

[5] However, the Eleventh Amendment bars this Court's jurisdiction over any claim against the State.

5

Corrigan Letter created "County policy" because Corrigan did not act as a County policymaker; he acted as a State policymaker. Because of these fundamental defects, this Court should dismiss Plaintiffs' Complaint against the County for failure to state a claim.

### 1. The County Did Not Commit the Underlying Constitutional Violations

The first reason this Court should dismiss Plaintiff's *Monell* claim is because the County did not commit the alleged underlying constitutional violations. The Sixth Circuit only holds a municipality liable under 42 U.S.C. § 1983 if the plaintiff establishes an underlying constitutional violation *by the municipality's officials*. *See Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020); *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000). Failure to make such a showing warrants dismissal. *See, e.g.*, *Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023) (affirming dismissal under 12(b)(6) because "[t]here can be no liability under *Monell* without an underlying constitutional violation.").

But Ohio law instructs that prosecutors do not act on behalf of a county when prosecuting criminal defendants. They prosecute on behalf of the State. *See, e.g.*, R.C. § 309.08(A) ("The prosecuting attorney shall prosecute, *on behalf of the state*, all complaints, suits, and controversies in which the state is a party . . . .") (emphasis added).

The Sixth Circuit has repeatedly acknowledged this fundamental feature of Ohio law. For instance, in *Pusey v. City of Youngstown*, the Sixth Circuit rejected a § 1983 plaintiff's attempt to attribute a municipal prosecutor's actions to a municipality. 11 F.3d 652 (6th Cir. 1993). The *Pusey* plaintiff alleged the prosecutor deprived her of her constitutional rights to free speech and court access when the prosecutor mishandled the criminal prosecution of the plaintiff's son's killer. *Id*. at 654. The plaintiff argued "the City [of Youngstown] caused the plaintiff's constitutional tort" through its policy and inadequate training of its prosecutor. *Id.* at 659.

6

Before addressing the city's policy, the court first focused on the underlying violation. *Id.* It "barred" any *Monell* claim against the city to the extent the claim "derive[d] from an allegation of wrongdoing on the part of [the prosecutor]" because the prosecutor "was acting on behalf of the state when she prosecuted state criminal charges and therefore her actions in prosecuting the charge, at that point, could not be attributed to the City." *Id.* As a result, the Sixth Circuit treated the lawsuit "as a suit against the state" and affirmed summary judgment for the city. *Id.* at 658. *See also Cady v. Arenac Cty.*, 574 F.3d 334, 345 (6th Cir. 2009) (affirming dismissal of § 1983 claim against county because prosecutor "was acting as an agent of the state rather than of Arenac County" when issuing and prosecuting criminal charges).

The Northern District of Ohio has consistently followed this rule. *See O'Connor v. Kelty*, No. 4:10CV0338, 2010 U.S. Dist. LEXIS 66789, at *8 (N.D. Ohio July 2, 2010) ("Prosecutors act as state agents when prosecuting criminal charges. Consequently, a suit against a prosecutor in his official capacity is to be treated as a suit against the state."); *Beckett v. Ford*, No. 3:06 CV 1319, 2007 U.S. Dist. LEXIS 75466, at *19 (N.D. Ohio Sep. 28, 2007) ("Because a prosecutor acts as a state agent when prosecuting criminal charges, a suit against a prosecutor in his or her official capacity is to be treated as a suit against the state."); *Thomas v. McGinty*, No. 1:13 CV 1297, 2013 U.S. Dist. LEXIS 84765, at *8 (N.D. Ohio June 17, 2013) ("The prosecutor, however, is clearly acting as an agent or instrumentality of the State of Ohio with regard to the filing and prosecuting state criminal offenses against plaintiff. Thus, . . . the State of Ohio is the real party in interest."); *Robinson v. Mahoning Cty.*, No. 4:16CV3011, 2017 U.S. Dist. LEXIS 59683, at *14 (N.D. Ohio Apr. 19, 2017) ("When a county prosecutor makes the decisions related to the issuance of state criminal charges against the plaintiff and the prosecution of the plaintiff, he is acting as an agent of the state rather than of the county."); *Palomino v. Cuyahoga Cty.*, No. 1:21-cv-2139, 2022

U.S. Dist. LEXIS 133727, at *6 (N.D. Ohio July 27, 2022) ("the Eleventh Amendment bars Plaintiff's federal claims against the Prosecutor Defendants in their official capacities.").

In this case, Plaintiffs attribute their underlying *Brady* injuries to the County. (*See* Compl. at ¶ 139.) Specifically, they claim Mason, Wagner, and Deckert acted on behalf of the County when they "suppressed" Officers Lundy and Jones's testimony during Plaintiffs' prosecutions. (*Id.* at ¶¶ 4, 50, 142-143.) This legal conclusion warrants no deference. *Christian*, 2021 U.S. App. LEXIS 23751, at *3.

Plaintiffs' assertion that Mason, Wagner, and Deckert acted for the County not only merits no deference on 12(b)(6) review, but it also misconstrues the law. Like in *Pusey*, Plaintiffs' alleged underlying injury stems entirely from prosecutors pursuing state criminal charges during a criminal prosecution. (*See, e.g.*, Compl. at ¶ 79 ("prosecutors William Mason, Christopher Wagner, and Brian Deckert suppressed evidence at trial and failed to disclose evidence to Plaintiffs' defense counsel.").) Consequently, the law does not attribute their actions to the County. It attributes them to the State. Without an underlying injury from the County, Plaintiffs cannot satisfy the first prong of the Sixth Circuit's test for municipal liability, and this Court should dismiss their claims.

### 2. The Corrigan Letter Did Not Create County Policy

Even if Plaintiffs' erroneous conclusion—that Mason, Wagner, and Deckert acted as County agents (rather than State agents)—is accepted, there is a second reason this Court should dismiss Plaintiffs' Complaint. It should dismiss because Corrigan was not a County policymaker when he allegedly penned the Corrigan Letter. He was a State policymaker. In other words, Plaintiffs cannot show that a *County* policy was the moving force behind the alleged violations.

In addition to showing an underlying violation, a § 1983 plaintiff must also demonstrate that a municipal policy or custom was "the moving force of the constitutional violation." *Polk*

8

*Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). This requires the plaintiff to show an official acted as a final policymaker for the municipality "in [the] particular area" relevant to the claim. *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). Put simply, the Supreme Court "ask[s] whether [the policymaking official] represents the State or the county when he acts in [the disputed] capacity." *Id*. at 785-86. This is a *legal question* that turns on the official's status under state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989).

The Supreme Court illustrated how to analyze this legal question in *McMillian v. Monroe Cty.* where it held that Alabama sheriffs act as policymakers for the State of Alabama—not their counties—when executing law enforcement duties. 520 U.S. 781, 793 (1997). In that case, the plaintiff brought a § 1983 claim against Monroe County, Alabama, arguing its sheriff acted as a county policymaker when he, among other things, "suppressed exculpatory evidence." *Id.* at 784. In rejecting the plaintiff's claim, the Court found the Alabama Constitution "strongly support[ed] Monroe County's contention that sheriffs represent the State" because it explicitly mentioned sheriffs as executive officers of the state. *Id.* at 787. The Court also deemed important an Alabama statute that granted sheriffs the duty "in their respective counties, by themselves or deputies, to ferret out crime, to apprehend and arrest criminals and, insofar as within their power, to secure evidence of crimes in their counties." *Id.* at 790 (citing Ala. Code § 36-22-3(4)). The Court reasoned that this mandate gave sheriffs "complete authority to enforce the state criminal law in their counties." *Id.* Ultimately, the Court found the evidence "strongly" supported the conclusion that Alabama sheriffs represent the State of Alabama when making policy in a law enforcement context. *Id*. at 793.

Similarly, in *Ermold v. Davis*, the Sixth Circuit held that a county clerk made policy for Kentucky even when she blatantly refused to follow Kentucky law. 936 F.3d 429, 435 (6th Cir.

9

2019). The plaintiffs in *Ermold* argued "that when [the clerk] refused to issue [marriage] licenses [to same-sex couples], she made a discretionary policy on Rowan County's behalf." *Id.* at 434. But the Court, ruling against the plaintiffs, explained that "Kentucky controls every aspect of how county clerks issue marriage licenses; Rowan County has no say whatsoever." *Id.* at 434. It explicitly rejected the possibility that a state agent's failure "to do her job" somehow "transforms the source of her power from the State to the county." *Id.* at 435. The court added that "such a proposition would make little sense; for whom an official acts has nothing to do with how well she acts." *Id.*

Here, Plaintiffs insist Corrigan served as final policymaker for the County when he allegedly wrote the Corrigan Letter. (Compl. at ¶ 68.) But Plaintiffs yet again assert a legal conclusion that contradicts the law and deserves no deference. Their conclusion defies the law for two reasons.

First, Ohio law considers prosecuting attorneys as State agents when making policy in a criminal prosecution context. Importantly, Ohio law views its prosecutors in a manner nearly identical to how Alabama treated its sheriffs in *McMillian*. For instance, the Ohio Constitution commands that "all prosecutions shall be carried on, in the name, and by the authority, of the State of Ohio." Ohio Const. Art. IV, § 20. And the Ohio Revised Code grants the prosecuting attorney the exclusive authority to "inquire into the commission of crimes within the county" and to "prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party." R.C. § 309.08(a).

Sixth Circuit precedent cements this proposition. *See, e.g.*, *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (rejecting plaintiff's argument that prosecutor was a 'policymaking official' for county because "state prosecutors' actions in prosecuting state crimes cannot

themselves establish municipal policy."); *see also Burchwell v. Warren Cty., Ohio*, 582 F. App'x 656, 656 (6th Cir. 2014) (affirming dismissal of § 1983 complaint against county because prosecutor was "acting on behalf of the state in [the] criminal proceedings" and was "not acting as policymaking officials for Warren County, such that the county may be held liable for their actions.").

Second, even if Corrigan blatantly disobeyed Ohio law with the alleged Corrigan Letter, his failure does not transform the source of his power from the State to the County. Ohio law controls every aspect of discovery in criminal prosecutions. For instance, the Ohio Rules of Criminal Procedure have long required prosecutors to disclose "evidence favorable to defendant." *See* former Crim.R. 16(B)(1)(f); *see also* current Crim.R. 16(B)(5). Moreover, for decades, the Ohio Supreme Court has instructed that the prosecution's withholding of material, exculpatory evidence in a criminal proceeding violates a defendant's due process right. *State v. Johnston*, 39 Ohio St. 3d 48, 60, 529 N.E.2d 898, 911 (1988). Like Kentucky's complete control over marriage licenses in *Ermold*, Ohio law affords prosecuting attorneys no discretion in the disclosure of exculpatory evidence. Prosecutors either turn it over (and follow Ohio law) or they do not. But the County has "no say whatsoever" in determining what evidence Ohio law considers exculpatory or whether Ohio law requires production of said evidence. Even if Corrigan disobeyed the law by exempting certain exculpatory evidence from disclosure (which, to be clear, he did not), he—like the defendant in *Ermold*—acted as a state policymaker.

Whatever the ultimate relevance of the Corrigan Letter to Plaintiffs' prosecution some 30+ years later, Plaintiffs underlying injury did not, as a matter of law, result from a "County policy." Because Plaintiffs cannot satisfy the second prong of the municipal liability test, this Court should dismiss Plaintiffs' Complaint against the County for failure to state a claim.

### C. Plaintiff's Civil Conspiracy Claim is Not Actionable against the County

This Court should also dismiss Plaintiffs' civil conspiracy claim for two reasons. First, Mason, Wagner, and Deckert acted exclusively on behalf of the State when they allegedly conspired to injure or deprive Plaintiffs of their rights. And second, R.C. § 2744.02 immunizes the County to the extent Plaintiff asserts a state law civil conspiracy claim.

#### 1. Mason, Magner, and Deckert Acted on Behalf of the State of Ohio.

A civil conspiracy under § 1983 involves "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th. Cir. 2011) (quotations omitted). To state a conspiracy claim, a plaintiff must show that (1) a "single plan" existed; (2) defendants "shared in the general conspiratorial objective" to deprive the plaintiff of his constitutional rights; and (3) "an overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). In addition, the plaintiff must show an underlying constitutional violation. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011).

Here, Plaintiffs allege that Mason, Wagner, and Deckert overtly acted "in furtherance of the conspiracy" by (i) dismissing Officers Lundy and Jones from testifying and (ii) withholding exculpatory statements from Plaintiffs' defense counsel. (Compl. at ¶ 143.) In doing so, Plaintiffs claim Mason, Wagner, and Deckert acted "on behalf of Defendant Cuyahoga County." (*Id.* at ¶ 141.) But, as with their *Monell* claim, this last assertion is a legal conclusion that receives no deference on 12(b)(6) review. *Christian*, 2021 U.S. App. LEXIS 23751, at *3. Regardless, Ohio law and the Sixth Circuit are clear: prosecutors do not act on behalf of their county when prosecuting criminal charges—they act on behalf of the State. *See* R.C. § 309.08(A); *Pusey*, 11 F.3d 652. Because Plaintiffs, as a matter of law, cannot show the County's overt actions caused

their underlying injury, they cannot state a claim for civil conspiracy. This Court should dismiss Plaintiffs' Complaint against the County in its entirety.

### 2. The County is Immune under R.C. § 2744.02

The County is entitled to immunity under R.C. § 2744.02 as to Plaintiffs' civil conspiracy claim. "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis." *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 2000-Ohio-486, 733 N.E.2d 1141 (2000). The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.*; R.C. § 2744.02(A)(1). The second tier requires a court to determine whether any of the five exceptions to immunity listed in R.C. § 2744.02(B) apply to expose the political subdivision to liability. *See Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 14-15. Under the third tier, the Court may reinstate immunity under certain circumstances, *i.e.*, if the plaintiff proves an exception to immunity applies. *See* R.C. § 2744.03.

Ohio law does not except intentional torts from immunity under R.C. § 2744.02(B)(2). *See Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 8 (Ohio 2002) (quoting *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (Ohio 1994)). This includes civil conspiracy, which is considered an intentional tort. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 700 N.E.2d 859 (Ohio 1998) (citing *USX Corp. v. Penn Cent. Corp.*, 137 Ohio App.3d 19, 26, 738 N.E.2d 13 (Ohio Ct. App. 1999)); *Sisler v. City of Lancaster*, 2010-Ohio-3039, ¶ 26 (Ohio Ct. App. 2010) (stating that a political subdivision is entitled to immunity because the torts of trespass, fraud, and civil conspiracy are intentional torts.); *Zieber v. Heffelfinger*, 2009-Ohio-1227, ¶ 27 (Ohio Ct. App. 2009).

To the extent Plaintiff is asserting a state law civil conspiracy claim, the County is entitled to immunity because no exception to the County's general grant of immunity under R.C. 2744.02(B) applies.

### III. CONCLUSION

For the foregoing reasons, the County respectfully requests the Court dismiss the Complaint against the County, in its entirety, under Rule 12(b)(6).

Respectfully submitted,

*/s/ Patrick J. Lipaj*
BRENDAN D. HEALY (0081225)
PATRICK J. LIPAJ (0100129)
Assistant Prosecuting Attorneys
Cuyahoga County Prosecutor's Office
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Tel: (216) 698-6447
Fax: (216) 443-7602
bhealy@prosecutor.cuyahogacounty.us
plipaj@prosecutor.cuyahogacounty.us

*Attorneys for Defendant Cuyahoga County*

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER

I hereby certify that on November 29, 2023, I requested, in writing, that Plaintiffs' counsel dismiss this Complaint. Plaintiffs' counsel did not dismiss, and Defendant Cuyahoga County still believes it is entitled to dismissal.

                                                */s/ Patrick J. Lipaj*
                                                PATRICK J. LIPAJ (0100129)
                                                Assistant Prosecuting Attorney

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that the foregoing Memorandum complies with the page limitations for dispositive motions in unassigned cases, as set forth in Local Rule 7.1(f).

                                                */s/ Patrick J. Lipaj*
                                                PATRICK J. LIPAJ (0100129)
                                                Assistant Prosecuting Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, a copy of the foregoing *Motion to Dismiss and Memorandum in Support* was filed electronically with the Court. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

                                                */s/ Patrick J. Lipaj*
                                                PATRICK J. LIPAJ (0100129)
                                                Assistant Prosecuting Attorney