**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL SUTTON**, AND **KENNY PHILLIPS**, <br><br> Plaintiffs, <br><br> -vs- <br><br> **DANIEL LENTZ, ET AL.,** <br><br> Defendants. | Case No. 1:23-cv-01878 <br><br> Judge David A. Ruiz <br><br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT COUNTY'S MOTION TO DISMISS** |

Plaintiffs Michael Sutton and Kenny Phillips were imprisoned for fifteen years for crimes they did not commit. On September 26, 2023, they filed this action against the Defendants for their various roles in causing Sutton's and Phillips' wrongful convictions. The Defendants include Defendants Lentz and Keane, the City of Cleveland police officers who suppressed and fabricated evidence against them, as well as Defendant Hartman, a Cleveland police detective, and Defendant Cuyahoga County, who are alleged to have caused exculpatory evidence to be suppressed.

This exculpatory evidence was critical because Defendants Lentz and Keane were not the only officers on the scene. The testimony of two other officers, Officer Lundy and former Officer Jones, completely contradicted the fabricated statements of Defendants Keane and Lentz. On this issue, Plaintiffs pled in the alternative: either Defendant Hartman, a police detective, suppressed the evidence when he told Officer Lundy and former Officer Jones to go home without testifying, or he disclosed Lundy and Jones' statements to the prosecutors, and it was the Cuyahoga County prosecutors who suppressed the exculpatory statements of Lundy and Jones at trial.

Defendant Cuyahoga County is responsible for this suppression of evidence because the Cuyahoga County prosecutors who suppressed the evidence were doing so in conformance with,

and as a result of, a longstanding and official policy of Defendant Cuyahoga County which permitted its prosecutors not to disclose certain exculpatory evidence—specifically witness statements and police reports. This is a classic *Monell* claim. Under *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978)*,* a plaintiff must show that the county's policy, custom, or procedure was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989). This is exactly what Plaintiffs have alleged.

On December 8, 2023, Defendant Cuyahoga County filed a Motion to Dismiss the claims against it. (Doc. 8). However, because Plaintiffs have alleged that their rights were violated, and have alleged that that violation was the result of Defendant Cuyahoga County's own policy, custom, or procedure, Plaintiffs have stated plausible claims against the County. Defendant County's Motion to Dismiss must be denied.

## I.  Relevant Facts Alleged in the Complaint

On May 28, 2006, there was a drive-by shooting on Woodland Avenue. Defendant Carl Hartman, a detective for the City of Cleveland, investigated the shooting. (Complaint, Doc. 1, PID#6, ¶ 35). He was led to believe, based on the fabricated statements of Keane and Lentz, that Defendants Keane and Lentz saw the shooting, that the shots came from Michael Sutton's vehicle, that they saw weapons in the hands of Plaintiff Phillips, and that the suspects had fired at Defendant Lentz during the chase that ensued. (*Id*. at PID#6-7, ¶ 35).

Prior to trial, when Hartman finally spoke to Officer Lundy and former Officer Jones, who were with Lentz and Keane when the shooting occurred, they were dumbfounded to hear that Lentz and Keane claimed they had been shot at. (*Id*. at PID#5, ¶ 21, PID#8, ¶ 45). They told Hartman "Nobody shot at us." (*Id*.).

After Lundy and Jones told Hartman their version of the facts, Defendant Hartman told

Lundy and Jones "hold on," and said he would talk to the prosecutor. (Complaint, Doc. 1, PID#9, ¶ 47). He left and told Cuyahoga County prosecutors William Mason, Christopher Wagner, and Brian Deckert what Officer Lundy and former Officer Jones had told him. (*Id*. at PID#9, ¶ 50). The four then individually, jointly, and in conspiracy with each other agreed to suppress this evidence in order to secure the convictions of the Plaintiffs. (*Id*. at PID#9-10, ¶ 51).

Cuyahoga County prosecutors dismissed Lundy and Jones as witnesses. (*Id*.). Hartman returned to Lundy and Jones and told them that they could leave. (*Id*. at PID#10, ¶ 51). As a result, Officer Lundy did not testify. (*Id*. at PID#10, ¶ 54). Former Officer Jones ultimately testified, but not on this issue. (*Id*.). As a result, the jury never heard Lundy's and Jones' version of events. (*Id*.). With the fabricated statements of Defendants Lentz and Keane unrebutted by Lundy and Jones, Plaintiffs were convicted. (*Id*. at PID#10, ¶ 55).

When Mason, Wagner, and Deckert suppressed the exculpatory statements of Lundy and Jones, they acted pursuant to the policies and practices of Defendant Cuyahoga County. (*Id*. at PID#12, ¶ 66). Defendant Cuyahoga County maintained an official policy permitting the suppression of certain exculpatory evidence. (*Id*. at PID#12, ¶ 67). Under this policy, defense counsel was entitled to evidence favorable to the defendant—in others words, exculpatory evidence—*except* there were exceptions to this general rule carved out by the County. (*Id*. at PID#12, ¶ 68). These exceptions included reports made by police departments and statements made by witnesses. (*Id*.). This official policy,[1] articulated and established by Cuyahoga County Prosecutor John Corrigan, permitted the suppression of otherwise exculpatory evidence, if it fit

---

[1] Defendant County complains that the policy itself was not attached to the Complaint and further complains that Plaintiffs did not "provide any additional evidence of [the policy's] existence." (Motion, Doc. 8, PID#66). However, complaints are not meant to put forth evidence, only allegations. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8 (a)(2). Evidence sufficiency is a question for summary judgment, after discovery has taken place.

into one of these exceptions. (*Id.*). As a result of this County policy, Cuyahoga County prosecutors regularly withheld and/or suppressed exculpatory evidence. (*Id.* at PID#12, ¶ 70).

This policy remains in place and is evidenced by the suppression of exculpatory evidence in the 1970s, 1980s, 1990s, and 2000s, including in the criminal cases of Isaiah Andrews, Ronald Larkins, Reginald Jells, George Seiber, Joe D'Ambrosio, Thomas Michael Keenan, Charles Jackson, Anthony Lemons, Derrick Wheatt, Laurese Glover, Eugene Johnson, Octavious Hood, and Vernon Brown. (Complaint, Doc. 1, PID#12-19, ¶¶ 69-73).

In addition to an official policy, Defendant Cuyahoga County has a custom of tolerance of such unconstitutional conduct. (*Id.* at PID#12, ¶ 70). These many examples of Cuyahoga County prosecutors suppressing evidence demonstrate a widespread, clear, and persistent pattern and practice of unconstitutional conduct. (*Id.* at PID#12-19, ¶¶ 69-73). Defendant County failed to act to remedy these abuses, despite knowledge of the pattern of misconduct. (*Id.* at PID#19, ¶ 74). This thereby perpetuated the unlawful practices and caused such violations to continue, including the violation of Plaintiffs' rights. (*Id.*). This failure at act was deliberately indifferent to the rights of criminal defendants. (*Id.* at PID#19, ¶¶ 75, 76).

Consistent with the municipal policy and practice described herein, prosecutors Mason, Wagner, and Deckert suppressed evidence at trial and failed to disclose that evidence to Plaintiffs' defense counsel. (*Id.* at PID#20, ¶ 79). The violation of Plaintiffs' rights under *Brady* was the direct and proximate result of Defendant County's policies because these policies were the moving force behind the misconduct of Mason, Wagner, and Deckert. (*Id.* at PID#20, ¶ 80).

## II.     Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the pleadings. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal citations omitted). To survive such a motion,

the factual allegations "need to be sufficient to give notice to the defendant as to what claims are alleged" and must be sufficient "to render the legal claim plausible." *Id*. at 722, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*., citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The Court construes the complaint in the light most favorable to the plaintiff. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014). These pleading standards are "not onerous." *B & G Towing, LLC v. City of Detroit, MI*, 828 F. App'x 263, 266 (6th Cir. 2020), citing *Iqbal*, 556 U.S. at 678-679.

## III.    Analysis

Defendant County has moved to dismiss the claims against it. However, the County's Motion ignores the substance of Plaintiffs' claims against it, instead arguing against completely different claims—claims not raised in Plaintiffs' Complaint at all. The majority of the County's Motion is devoted to the argument that the State of Ohio is the real party in interest in claims against individual prosecutors, sued in their official capacity, for actions made while prosecuting state criminal charges. But Plaintiffs' Complaint did not raise official capacity claims against any individual Cuyahoga County prosecutors. Plaintiffs' Complaint raised claims instead against Defendant Cuyahoga County. This is a critical distinction, because claims against Counties are fundamentally different from official capacity claims against individual prosecutors and as a result are treated differently by the Sixth Circuit. Counties are municipal corporations and are liable for their own illegal acts, including for instituting policies that cause constitutional violations. Because Plaintiffs' Complaint alleges plausible claims against Defendant Cuyahoga County, the County's Motion must be denied and Plaintiffs' claims must be allowed to proceed to discovery.

### A. Elements of *Monell* Claims.

A municipality may not be held liable under § 1983 "solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Instead, a municipality is liable under § 1983 for its "*own illegal acts*." *Connick v. Thompson*, 563 U.S. 51, 60 (2011), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). (emphasis in original). Thus, municipalities are liable "for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). This breaks down into two elements: whether there was an underlying violation by the employee, and whether the municipal policy was the moving force behind the violation.

There are four general methods of proving a municipality's illegal policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019), citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The first two methods of demonstrating municipal liability are based on a policy itself being unconstitutional. The latter two are based on a failure to act that is deliberately indifferent to the rights of persons who come into contact with officials. *See North v. Cuyahoga County*, 754 F.App'x 380, 384 fn. 2 (6th Cir. 2018), citing *Garner v. Memphis Police Dept.*, 8 F.3d 358, 365-366 (6th Cir. 1993).

Further, plaintiffs can prevail on a *Monell* claim regardless of whether the individuals who committed the underlying violation are parties to the suit or are entitled to immunity. *See e.g. Garner*, 8 F.3d at 365 ("a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity"); *Andrews v. Wayne Cnty.*, 957 F.3d 714, 725 (6th Cir. 2020) (analyzing liability of county based on actions of

non-party's actions).

**B.  Plaintiffs' Allegations Adequately State a Claim against Cuyahoga County.**

Plaintiffs' Complaint unquestionably alleges constitutional violations by County employees. William Mason, Christopher Wagner, and Brian Deckert were employed by Defendant Cuyahoga County, and they unlawfully suppressed the exculpatory statements of Officer Lundy and former Officer Jones in violation of Plaintiffs' *Brady* rights. (Complaint, Doc. 8, PID#4, ¶ 17; PID#9, ¶¶ 50-51, PID#12, ¶ 69, PID#20, ¶¶ 79-80). The facts alleged in Plaintiffs' Complaint also more than adequately allege plausible *Monell* claims against Defendant Cuyahoga County under at least two of the methods of demonstrating municipal liability: an official policy and a custom of tolerance of unconstitutional conduct.

**i.  Plaintiffs' Complaint Adequately Alleged that an Official Policy of Cuyahoga County Caused the Violation of Plaintiffs' Rights.**

"[T]o satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Jackson*, 925 F.3d at 829 (internal quotation omitted). A "policy or custom does not have to be written law; it can be created 'by those whose edicts or acts may fairly be said to represent official policy.' " *Monell*, 436 U.S. at 690-691. This is exactly what Plaintiffs alleged.

First, the Complaint identified the policy: Defendant Cuyahoga County maintained an illegal official policy permitting the suppression of certain exculpatory evidence. (Complaint, Doc. 1, PID#12, ¶ 67). Under this policy, defense counsel was generally entitled to evidence favorable to the defendant, *except* the County had carved out certain exceptions—prose<u>cutors were not required to disclose reports made by police departments or witness statements</u>, regardless of whether they were otherwise exculpatory. (*Id*. at PID#12, ¶ 68).

The Complaint also connected this official policy to the County. As explained in the

Complaint, the policy was established by longtime Cuyahoga County Prosecutor John Corrigan. (*Id*. at PID#12, ¶ 68). And as a result of this County policy, Cuyahoga County prosecutors regularly withheld and/or suppressed exculpatory evidence, including in criminal cases of Isaiah Andrews, Ronald Larkins, Reginald Jells, George Seiber, Joe D'Ambrosio, Thomas Michael Keenan, Charles Jackson, Anthony Lemons, Derrick Wheatt, Laurese Glover, Eugene Johnson, Octavious Hood, and Vernon Brown. (*Id*. at PID#12-19, ¶¶ 69-73).

Finally, the Complaint alleged that the violations suffered by Plaintiffs Sutton and Phillips—the suppression of the statements of two witnesses, Officer Lundy and former Officer Jones—were caused by the execution of this policy. Prosecutors Mason, Wagner, and Deckert suppressed these witness statements at trial and failed to disclose them to Plaintiffs' defense counsel. This was consistent with and caused by the policy articulated by Plaintiffs, which was still in effect at the time Plaintiffs' rights were violated and which expressly excluded witness statements from the disclosure obligations of Cuyahoga County prosecutors. (*Id*. at PID#12, ¶ 69, PID#20, ¶¶ 79, 80).

Because Plaintiffs have alleged that the constitutional violations Plaintiffs suffered were caused by Defendant County's unconstitutional policy, the Complaint states plausible claims against the County, both for the suppression itself and the conspiracy to suppress.

### ii. Plaintiffs' Complaint Adequately Alleged that a Custom of Tolerance of Unconstitutional Conduct Caused the Violation of Plaintiffs' Rights.

Likewise, Plaintiffs' Complaint adequately alleges a custom of tolerance. When a municipality has a custom of tolerance or inaction to constitutional violations, it is shown by "(1) the existence of a clear and persistent pattern of [violations under §1983] by municipal employees, (2) notice or constructive notice on the part of the City; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to

amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in the constitutional deprivation." *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008). This is exactly what Plaintiffs alleged.

The Complaint identified a clear and persistent pattern of violations, specifically *Brady* violations, by Cuyahoga County prosecutors, evidenced by the suppression of exculpatory evidence in the 1970s, 1980s, 1990s, and 2000s, including in the criminal cases of Isaiah Andrews, Ronald Larkins, Reginald Jells, George Seiber, Joe D'Ambrosio, Thomas Michael Keenan, Charles Jackson, Anthony Lemons, Derrick Wheatt, Laurese Glover, Eugene Johnson, Octavious Hood, and Vernon Brown. (Complaint, Doc. 1, PID#12-19, ¶¶ 69-73).

Further, Defendant County was on notice of this misconduct. (*Id*. at PID#19, ¶ 74). Despite being on notice, Defendant County failed to act to remedy these abuses. (*Id*.). This failure to act was deliberately indifferent to the rights of criminal defendants. (*Id*. at PID#19, ¶¶ 75, 76).

Finally, the Complaint alleged that the violations suffered by Plaintiffs Sutton and Phillips were caused by this policy of inaction. Prosecutors Mason, Wagner, and Deckert suppressed evidence at trial and failed to disclose this evidence to Plaintiffs' defense counsel. This was consistent with and caused by the policy of inaction by Defendant County, because the County had tolerated this exact misconduct for decades, allowing the pattern and practice of misconduct— specifically *Brady* violations—to persist. (*Id*. at PID#19, ¶¶ 75, 76, PID#20, ¶¶ 79, 80). As the direct and proximate result of this policy, Plaintiffs' rights were violated. (*Id*. at PID#20, ¶ 80).

Because Plaintiffs have alleged that the constitutional violations Plaintiffs suffered were caused by Defendant County's unconstitutional custom of tolerance of the unconstitutional suppression of evidence, the Complaint states plausible claims against County, both for the suppression itself and the conspiracy to suppress.

### C. None of Defendant County's Arguments Support Dismissal of Plaintiff's Claim Against It.

Defendant County argues that Plaintiffs' Complaint is premised "upon a foundation of two faulty legal conclusions." (Motion, Doc. 8, PID#67). However, these "conclusions" are straw men of the County's own creation—neither of these purported conclusions "masquerading as factual allegations" appear in Plaintiffs' Complaint at all and Plaintiffs' claims against the County do not depend on them. Defendant County errs because the County treats the claims as if they were official capacity claims against the individual prosecutors who worked on Plaintiffs' criminal case. However, Mason, Wagner, and Deckert are not the Defendants here—*Cuyahoga County is*. It is irrelevant whether the individual prosecutors were acting on behalf of the County or the State, and irrelevant whether those individuals are immune from suit as a result, because Plaintiffs did not sue individual prosecutors—*they sued the County*.

Because the Defendant County must accept the allegations as they are pleaded, because the Complaint alleges that the County had an unconstitutional policy, and because the County is liable for its *own illegal acts*, the County's motion must be denied.

### i. The County is Not a State Agent and is Not Entitled to Eleventh Amendment Immunity.

For well over 100 years, the United States Supreme Court has recognized that the Eleventh Amendment's grant of sovereign immunity to the states does not shield counties from liability. *Lincoln Cnty. v. Luning*, 133 U.S. 529, 530 (1890). In the intervening 130 years, federal courts have recognized time and again that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials[,] . . . but does not extend to counties." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (internal citations omitted).

Defendant County's Motion nonetheless argues that the claims against the County fail because the "real party in interest is the State of Ohio—not the County." (Motion, Doc. 8, PID#68).

This ignores the allegations of Plaintiffs' Complaint and impermissibly attempts to extend the State's Eleventh Amendment immunity to the County. Because Plaintiffs' Complaint brought claims against the County, not the State, the County cannot rely on Eleventh Amendment immunity to dismiss Plaintiffs' claims. *Mt. Healthy*, 429 U.S. at 280.

In the State of Ohio, individual prosecutors do act on behalf of the State as a matter of law, when prosecuting state criminal charges. *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993). As a result, when an individual prosecutor is sued in their official, rather than individual capacity, for those actions, that is in effect a suit against the State. *O'Connor v. Kelty*, No. 4:10CV0338, 2010 WL 2650198, *3 (N.D. Ohio July 2, 2010), citing *Pusey*, 11 F.3d at 657-658; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, Plaintiffs' Complaint did not raise claims against Mason, Wagner, or Deckert in their individual *or* their official capacities at all, but against the County itself. As a result, the County's argument misses the mark.

In fact, the caselaw relied on by Defendant County actually establishes that claims against the County *are treated differently* from claims against individual prosecutors and demonstrates exactly why the allegations here state plausible claims. In *Pusey*, relied on by the County, a city prosecutor and the city she worked for were sued. To the extent that the city prosecutor was sued in her official capacity, the suit was against the state and was barred. *Pusey*, 11 F.3d at 657-658. However, the court did *not* find that the claim against the city itself failed for the same reason— rather, the claim against the city failed merely because the plaintiff had made no allegations that a policy existed and caused the violation. *Id*. at 659. As the court explained, the *only* allegation ostensibly made against the city derived from "an allegation of wrongdoing on the part of" the prosecutor. *Id*. Because a "municipality is not liable under 42 U.S.C. § 1983 for its employees' acts on a *respondeat superior* theory" this was insufficient. *Id*. In the absence of allegations of a

policy, there was no viable claim against the city. Defendant County's argument completely ignores the part of the analysis actually about the municipality.

Likewise, in *Robinson v. Mahoning County*, the claims against the individual prosecutors in their official capacities were barred by the Eleventh Amendment, but the *Monell* claim against Mahoning County was not. No. 4:16CV3011, 2017 WL 1399931, *5-6 (N.D. Ohio April 19, 2017). Rather, a "governmental entity, such as Mahoning County, *can* be found liable under § 1983… where the entity itself causes the constitutional violation at issue." *Id*. at *4. (emphasis added). The *Monell* claim against Mahoning County in *Robinson* failed only because the plaintiff failed "to allege a single fact in the Complaint… supporting the proposition that Mahoning County itself caused Plaintiff harm." *Id*.

*Cady v. Arenac Cnty*., also relied on by Defendant County, is more of the same.[2] While the claim against the individual prosecutor in their official capacity was barred by the Eleventh Amendment, 574 F.3d 334, 342-345 (6th Cir. 2009), the analysis applied to Arenac County was different. As explained in *Cady*, Arenac County is "not entitled to sovereign immunity under the Eleventh Amendment." *Id*. at 345. There, the State was not the real party in interest in the claim against the county, but instead the claim against the county failed because the plaintiff "did not allege any Arenac County policy or custom… that violated his rights." *Id*.

---

[2] The remaining cases cited by Defendant County only involve claims brought against a prosecutor in their official capacity. None stand for the proposition that the County cannot be liable when its policy causes its employees to violate the rights of criminal defendants. S*ee Kelty*, 2010 WL 2650198, *3 (dismissing prosecutor because he was sued in his official capacity for his actions prosecuting criminal charges); *Beckett v. Ford*, No. 3:06 CV 1319, 2007 WL 2891122, *6 (N.D. Ohio Sept. 28, 2007) (same); *Thomas v. McGinty*, No. 1:13 CV 1297, 2013 WL 3057011, *3 (N.D. Ohio June 17, 2013) ("plaintiff's § 1983 claims against defendant McGinty in his official capacity is barred by the Eleventh Amendment because the State of Ohio is the real party in interest"); *Palomino v. Cuyahoga County*, No. 1:21-cv-2139, 2022 WL 2964807, *3 (N.D. Ohio July 27, 2022) (same).

Every one of these cases allowed for the possibility that a County would be liable where its own policies caused county prosecutors to violate the Constitution. Defendant County nonetheless attempts to characterize the county prosecutors who worked on the Plaintiffs' criminal case as no longer the "municipality's officials" when they prosecuted Plaintiffs' cases and thus, that the County could not be responsible for their actions. However, Mason, Wagner, and Deckert were employees of Defendant County. (Complaint, Doc. 8, PID#4, ¶ 17). The County does not dispute this. The County has produced no authority in support of the proposition that a County cannot be held responsible for the actions of its own employees merely because they sometimes act with State authority.[3] In fact, *Pusey*, *Cady*, and *Robinson* all support finding counties liable for the acts of their employees, regardless of whether the individual prosecutors effectuating that violation were acting on behalf of the state as a matter of law when effectuating the underlying violation. The only question is whether there were sufficient allegations of a policy. In *Pusey*, *Cady*, and *Robinson*, there were no actual allegations of a county policy, only bad acts by individual prosecutors. Here, that is not the case. Plaintiffs have alleged that Cuyahoga County's policies and practices permitting the suppression of witness statements caused its employees to suppress the exculpatory statements of witnesses Officer Lundy and former Officer Jones. For this reason, Defendant County's Motion must be denied.

### ii. Plaintiffs' Complaint Alleges a County Policy, Not a State Policy, was the Moving Force Behind the Violation of Their Rights.

The question then, is whether the Complaint alleged a County policy that caused the

---

[3] The County points to four cases in support of this proposition, but these cases merely include general language about violations "by the county's officials," *Burkey v. Hunter*, 790 F.App'x 40, 41 (6th Cir. 2020), and none of these cases found that a county employee could no longer be treated as one of the municipality's officials merely because some of their actions were made on behalf of the State. *See Burkey*, 790 F.App'x at 41; *Bukoski v. City of Akron*, 326 F.3d 702, 712-713 (6th Cir. 2003); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000); *Chambers v. Sanders*, 63 F.3d 1092, 1101-1102 (6th Cir. 2023).

violations. This is exactly what Plaintiffs have alleged.

In *Brotherton v. Cleveland*, 173 F.3d 552, 565-566 (6th Cir. 1999), the Sixth Circuit explained that when "a State [has] authorized a local entity to act within certain bounds, and the local entity [has] formulated a policy in response," that policy is attributable to the local entity, not to the State. The "essential question" here applies "to *policy* choices." *Cady*, 574 F.3d at 343. (emphasis in original). On the other hand, the individual acts of a prosecutor in enforcing state law "cannot *themselves* establish municipal policy." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014), citing *Pusey*, 11 F.3d at 659. (emphasis added). Thus, while the prosecutors' acts themselves do not establish the existence of the policy, the County will be responsible for the acts of the prosecutors when the prosecutors, in violating the plaintiff's constitutional rights, "were following a municipal policy in doing so." *D'Ambrosio*, 747 F.3d at 387.

The Ohio Rules of Criminal Procedure obligate prosecutors to turn over "evidence favorable to the defendant." Crim.R. 16(B)(5); s*ee also* former Crim.R. 16(b)(1)(f). However, this State rule does not define "evidence favorable to the defendant." And prior to 2010, the rule provided little guidance as to how, when, and in what form evidence was required to be disclosed. This left a lot of discretion to each county as to how to interpret and how to effectuate this rule. Cuyahoga County's policy itself demonstrates that it is an interpretation of this rule, formulated in response to it. The policy did not merely repeat Rule 16 (nor did it direct the prosecutors in his office to ignore Rule 16). Rather, Rule 16 was the starting place—the policy *was* to disclose "evidence favorable to the defendant," *unless* it fell into certain exceptions, including exceptions for witness statements. (Complaint, Doc. 1, PID#12, ¶ 68). This is exactly the type of policy choice that a county will be culpable for under *Brotherton* and *Cady*. Corrigan was not "mechanically adopt[ing] and enforc[ing]" a state policy, but rather "made [a] conscious policy decision[], and

thus did not act merely as an arm of the State." *Brotherton*, 173 F.3d at 565.

The Defendant County nonetheless argues that that Corrigan acted not as a county policymaker but as a state policymaker. This highlights the absurdity of the County's argument. If Corrigan had been a State policymaker, then this policy would have applied throughout the State of Ohio. There is no allegation that the policy applied anywhere other than Cuyahoga County or that Corrigan had the authority to adopt such a policy.

The *McMillian v. Monroe Cty.*, 520 U.S. 781 (1997), analysis clarifies the distinction between a prosecutor's state and county acts. The County attempts to compare Corrigan's act in establishing a county-wide policy to the Alabama sheriff at issue in *McMillian*, but fails to actually apply its analysis. The key problem with the County's argument is that it seeks to treat all actions by a prosecutor the same. But *McMillian* does not treat all actions the same. Whether an official acted as an arm of the state or the municipality depends "on whether the officer represents the State in the 'particular area' or on the 'particular issue' in question." *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015), citing *McMillian*, 520 U.S. at 785 & n. 2.

In *McMillian*, there was no allegation of a county-wide policy. Rather, the issue was over specific unconstitutional actions taken by the sheriff in a particular criminal investigation. It was only a policymaking issue because he was the final policymaker, so his actions bound the entity he was acting on behalf of. The question then, was what entity he was acting on behalf of. The Court found that the sheriff was acting on behalf of the state because the Alabama Constitution defined sheriffs as executive officers, the state had the authority to impeach a sheriff (not the county), and "most importantly" his specific actions at issue, in investigating crime, arresting criminals, and securing evidence of crimes were actions over which the "county commission... ha[d] no direct control over" but the "Governor and the attorney general d[id]." *Id*. at 789-791.

In applying *McMillian*, courts examine and balance six factors: (1) the State's potential liability for a judgment, (2) how state statutes and courts refer to the official, (3) who appointed the official, (4) who pays the official, (5), the degree of state control over the official; and (6) whether the functions involved fell within the traditional purview of state or local government. *Crabbs*, 786 F.3d at 429. Ohio law does treat prosecutors as state actors when for the actual acts of prosecuting state criminal charges because they do so with the authority of the State. *Pusey*, 11 F.3d at 659. However, because this analysis is specific to the "particular area" or "particular issue" in question, this is not determinative. *Id*. at 429, citing *McMillian*, 520 U.S. at 785 & n. 2. The act of policymaking alleged here was not Corrigan's personal actions in prosecuting a particular state criminal charge. Rather, he is alleged to have developed and documented a policy applicable to all prosecutors in Cuyahoga County, a different distinct from the State policy.

The factors of the *McMillian* analysis all support treating Corrigan as a County policymaker. First, the party is the County itself. If the County is found liable, the State will not be liable for that judgment. Second, state statutes and courts refer to prosecuting attorneys as county officers. The Supreme Court of Ohio has recognized that a "prosecuting attorney" is a "county officer." *State ex rel. Finley v. Lodwich*, 137 Ohio St. 329, 29 N.E.2d 959, at para. 1 of the syllabus (1940). The position of prosecuting attorney is not mentioned in the Ohio Constitution and prosecutors are not among the state officials created by Title I of the Revised Code, entitled "State Government." Rather, the prosecuting attorney is a role created by R.C. § 309.01. This provision appears in Title III of the Revised Code, the section entitled "Counties." The prosecuting attorney is, among other things, the designated legal advisor to the county, including to county institutions and the board of county commissioners. R.C. § 309.09(A).

Third, prosecutors are elected by the county. R.C. § 309.01. Thereupon they give bond to

be placed in the county treasury. R.C. § 309.03. Notably, in cases of a vacancy, a new prosecuting attorney will be appointed by "the county central committee of the political party that nominated the last occupant." R.C. § 305.02(B)(1). If the last occupant was an independent, the appointment shall be made by the board of county commissioners. R.C. § 305.02(B)(2). And until such an appointment is made, the board of county commissioners may "appoint a person to hold [the office]... as an acting officer." R.C. § 305.02(D). Fourth, prosecutors are paid from the "General County Fund." R.C. § 325.01.

Fifth, the state has little control over the county prosecutors. The State has no day-to-day authority over the operation of county prosecutor's offices. While the State gives prosecutors the authority to prosecute state crimes, it does not control how or when they do so. For example, the prosecuting attorney gives the attorney general a report only once a year, and that report merely specifies the number of people convicted, acquitted, and amounts of costs and fines collected. R.C. § 309.15. Critically, on the issue here—making a county-wide policy regarding the operation of a County office—the State exercises no control. Finally, the function at issue here—the making of county policy regarding the operation of a county office—is traditionally in the purview of the local government, not the State.

All of these factors support the finding that when a county prosecuting attorney makes policy for his office, in his county, regarding how that office will operate, that he is doing so on behalf of the County and not the State. The "County Prosecutor c[an] establish county policy under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986) (discussing Ohio county prosecutor). This is plainly a circumstance where the prosecutor made county policy.

*Ermold v. Davis*, 936 F.3d 429 (6th Cir. 2019), does not support otherwise. *Ermold* held that the fact that a county official violated a state policy does not necessarily constitute a county

policy. The key is the amount of discretion given to the official. In *Ermold*, "Kentucky control[ed] every aspect of how county clerks issue marriage licenses; Rowan County ha[d] no say whatsoever." *Id*. at 434. Here, the State of Ohio does not have the same level of control over prosecuting attorneys as Kentucky had over county clerks in the specific context of marriage licenses. Contrary to the assertion of Defendant County, the State does not "control[s] every aspect of discovery in criminal prosecutions." (Motion, Doc. 8, PID#74). The County points to Rule 16, but while Rule 16 provides generally that evidence favorable to the criminal defendant should be disclosed, it does not define "evidence favorable to the defendant" nor does it provide how, when, or in what form that evidence should be disclosed. The policy established by Corrigan used the discretion he was given by the State of Ohio to implement state rules on behalf of Cuyahoga County and merely further defines what evidence is included in the category of "evidence favorable to the defendant."

Much more on point is *D'Ambrosio*, which specifically addresses county prosecutor's offices in Ohio. In *D'Ambrosio*, the Sixth Circuit explained that where there is an allegation of a county-specific prosecutor's office policy that caused the violation of a criminal defendant's rights at trial, the County will be liable for its own policy. *D'Ambrosio*, 747 F.3d at 387. In *D'Ambrosio*, the plaintiff's *Monell* claims failed, not because the county policymaker acted as a state policymaker in creating policy for the prosecutor's office, but because the only allegations made by plaintiff were that the particular prosecutor, and "perhaps one or two" other members of the Prosecutor's Office, "instigated and implemented habitually unconstitutional practices, *not that they were following municipal policy in doing so*." *Id*. at 387. The Court acknowledged that a pattern of unconstitutional conduct would trigger municipal liability, but the problem was that there was no "clear and persistent" pattern alleged. Rather the complaint was limited to allegations

regarding the repeated failures "of only one prosecutor." *Id*. at 388.

The *D'Ambosio* analysis applies here. Under this analysis the individual acts of Mason, Wagner, and Deckert do not establish that a policy existed, but Corrigan's actions, as final policymaker, establishing a county-wide policy permitting witness statements to be suppressed, is evidence that a policy existed.

Additionally, Plaintiffs' Complaint also separately establishes a policy existed because a clear and persistent pattern of *Brady* violations is alleged. In *D'Ambrosio*, one example of a *Brady* violation was not enough to demonstrate a pattern. Likewise, the Supreme Court has found that "four previous *Brady* violations were insufficient to alert the prosecutor's office that another *Brady* violation might occur in the future in the absence of corrective action." *Id*. at 387, citing *Connick*, 131 S.Ct. at 1360. Here, on the other hand, Plaintiffs have alleged more than a dozen similar instances of *Brady* violations. (Complaint, Doc. 1, PID#12-19, ¶¶ 69-73). This clear and persistent pattern of similar violations demonstrates Cuyahoga County's deliberate indifference to the risk of further constitutional violations by its employees and establishes a policy of inaction.

Because Plaintiffs alleged the existence of a policy of suppressing witness statements and alleged that Mason, Wagner, and Deckert "were following [that] municipal policy in" suppressing the statements of Officer Lundy and former Officer Jones, Defendant County's Motion must be denied. *D'Ambrosio*, 747 F.3d at 387.

### D. The County Should Not Dismiss Plaintiffs' § 1983 Conspiracy Claim Because Plaintiffs' Complaint States a Claim.

The Defendant County makes two arguments for dismissal of Count Nine, for § 1983 conspiracy. The first argument merely repeats the argument addressed in Section III(C)(i) and (ii) that the County cannot be liable for its own policies or for the actions of its own employees. As explained above, this argument is unpersuasive.

The second argument raised against the conspiracy claim is that the County is immune under R.C. § 2744.02. However, the County erroneously treats the claim as if it were a state law claim, not a claim under 42 U.S.C. § 1983. The County asserts that to "the extent Plaintiff[s are] asserting a state law civil conspiracy claim, the County is entitled to immunity." (Motion, Doc. 8, PID#77). Because Count Nine is not a state law conspiracy but a federal one pursuant to § 1983, there is no immunity. As expressly provided in R.C. § 2744.09(E), the chapter "shall not apply to" claims "based upon alleged violations of the constitution or statutes of the United States." For this reason, there is "ample authority for the finding that pursuant to R.C. 2744.09(E), the immunities found within R.C. Chapter 2744 do not apply to Section 1983 actions." *Two Bridges, LLC v. City of Youngstown*, No. 4:20-cv-2759, 2022 WL 1487607, *8 (N.D. Ohio May 10, 2022), citing *Meekins v. City of Oberlin*, 2018-Ohio-1308, ¶ 20; *Summerville v. City of Forest Park*, 128 Ohio St.3d 221, 943 N.E.2d 522 (Ohio 2010); *Derrico v. Moore*, No. 1:17CV866, 2019 WL 1876960, at *16 (N.D. Ohio Apr. 25, 2019). For these reasons, Defendant County's Motion, must be denied.

## IV.    Conclusion

Defendant Cuyahoga County has maintained an official, unconstitutional policy for decades, resulting in the regular suppression of exculpatory evidence by its prosecutors and resulting in numerous wrongful convictions, including that of the Plaintiffs, and earning it the dubious honor of having the most wrongful convictions in the State of Ohio. Cuyahoga County cannot be permitted to evade the consequences of its own actions. For this reason and all of the reasons given above, Defendant County's Motion Dismiss must be denied and this case must be permitted to proceed to discovery.

Respectfully submitted,

*/s/ M. Caroline Hyatt*
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)

FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
elizabeth@fggfirm.com

Jacqueline Greene (0092733)
M. Caroline Hyatt (0093323)
FRIEDMAN GILBERT + GERHARDSTEIN
35 East 7th Street, Suite 201
Cincinnati, OH  45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com
caroline@FGGfirm.com

*Counsel for Plaintiffs Michael Sutton and Kenny Phillips*

## CERTIFICATE OF COMPLIANCE WITH LOC. R. 7.1

I certify that this memorandum adheres to the page limitations set forth in Northern District of Ohio Local Rule 7.1, as this is an unassigned civil case and the memorandum does not exceed 20 pages.

*/s/ M. Caroline Hyatt*
*One of the Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ M. Caroline Hyatt*
*One of the Attorneys for Plaintiff*