UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SUTTON, *et al.*, | ) |
| | ) Civil Case No. 1:23-cv-01878 |
| Plaintiffs, | ) |
| | ) JUDGE DAVID A. RUIZ |
| vs. | ) |
| | ) |
| DANIEL LENTZ, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANT CUYAHOGA COUNTY'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

This dispute turns on two crucial allegations in Plaintiffs' Complaint: (1) that *the County's* "actions and inactions" violated Plaintiffs' rights and (2) that a *County* policy or custom was the "moving force" behind Plaintiffs' alleged violations. These allegations are critical because municipal liability against the County hinges on the truth of both.

Plaintiffs' response downplays the significance of these allegations. First, their Opposition contends the allegations do not "appear in Plaintiffs' Complaint at all," and insists their claims "do not depend on them." (ECF #12 at p. 10.) It then dubs the allegations merely "straw men." (*Id.*) But these allegations do, in fact, appear in the Complaint. (ECF #1 at ¶ 139[1]; *id* at ¶ 135[2].) And their claims do depend on them because Plaintiffs cannot establish the Sixth Circuit's two prongs

---

[1] "As a direct and proximate result of **the Defendant Cuyahoga County's actions and inactions, Plaintiffs' constitutional rights were violated** and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above." (ECF #1 at ¶ 139 (emphasis added).)
[2] "The policies, practices, and customs described in this Complaint were **maintained and implemented by Defendant Cuyahoga County** with deliberate indifference to Plaintiffs' constitutional rights and **were a moving force** behind the violations of those rights." (*Id.* at ¶ 135 (emphasis added).)

1

for *Monell* liability without them. Far from "straw men," these allegations suffer from two issues: (1) they are legal conclusions—not factual assertions—and (2) they are erroneous.

The first issue is important because the Sixth Circuit distinguishes between a complaint's factual assertions and legal conclusions. While district courts must accept factual assertions as true, they are "not required to accept a plaintiff's legal conclusions." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 n.1 (6th Cir. 2008). This does not mean the Court must reject the conclusions; it just allows the Court to inquire further.

Plaintiffs do not contest this legal distinction. They instead double down on both allegations as factual assertions this Court "must accept." (ECF # 12 at p. 10.) The County disagrees. The attribution of actions and policies to a municipality (versus the state) is fundamentally a legal question. As a result, this Court can assess the conclusions' validity.

Upon assessment, the Court will discover the allegations' second issue: both conclusions err as a matter of law. The first is incorrect because the County did not cause Plaintiffs' alleged "underlying constitutional violation." The State, if anyone, did. Ohio law confirms that prosecutors act on behalf of the State when prosecuting criminal defendants. Consequently, prosecutors' actions cannot be imputed to a municipal or county government. In this case, because Ohio law does not attribute the actions of prosecutors Mason, Wagner, and Deckert to the County, the County did not cause Plaintiffs' alleged "underlying constitutional violations."

The second conclusion is also incorrect. County policy was not the "moving force" behind Plaintiffs' alleged deprivation because prosecuting attorneys make State policy when enforcing state law. And, while quasi-state officials may create municipal policy when state law affords local discretion in the disputed context, Ohio law did not permit prosecuting attorneys to arbitrarily withhold material, exculpatory evidence at the time of Plaintiffs' trial in 2007. Because Ohio law

2

afforded no discretion, the Corrigan Letter (and its alleged continued implementation thirty years later) did not create County policy and, as a result, County policy was not the "moving force" behind Plaintiffs' alleged deprivation.

At bottom, Plaintiffs rely on the allegations in paragraphs 135 and 139 of their Complaint to state a claim against the County. But both are legal conclusions. The Court need not accept them. Instead, it should reject both conclusions as erroneous and grant the County's Motion to Dismiss.

## ARGUMENT

Plaintiffs must show two elements to establish municipal liability against the County under 42 U.S.C. § 1983. *Morris v. City of Detroit*, 789 F. App'x 516, 519 (6th Cir. 2019). First, they must demonstrate they "suffered the deprivation of a constitutional right . . . at the hands of the [County]." *Id*. Second, Plaintiffs must show the County "engaged in a 'policy or custom' that was the 'moving force' behind the deprivation." *Id.* (citation omitted).

There is no dispute that Plaintiffs recite these two elements in their Complaint. Rather, this Motion challenges whether *the County* (as opposed to the State) was the entity legally responsible for those alleged actions and policy. Plaintiffs insist the County "must accept" these allegations as true because they are facts. But they are not. They are legal questions that only this Court can answer as a matter of law. And, upon inspection, it is evident the State was both the actor and policymaker. Because of these defects, Plaintiffs cannot state a *Monell* claim against the County.

**I.      This Court Need Not Accept the Legal Conclusions in Paragraphs 135 and 139**

As a preliminary matter, Plaintiffs' assertions in paragraphs 135 and 139 constitute legal conclusions. Courts within the Sixth Circuit hold that the determination of whether to attribute a municipal employee's actions to his municipal employer is a legal question. *See Saum v. Savage*,

No. 2:13-CV-00872, 2014 U.S. Dist. LEXIS 91636, at *17-19 (S.D. Ohio July 7, 2014) (granting 12(b)(6) motion because complaint's allegation that municipal court employees' actions were attributable to city was an erroneous legal conclusion). Likewise, the Sixth Circuit instructs that the inquiry into whether an official is a policymaker for his municipality versus the state "is a legal question that turns on the official's status under state law." *Harness v. Anderson Cty.*, No. 21-5710, 2023 U.S. App. LEXIS 17956, at *5 (6th Cir. July 12, 2023).

But, in this case, Plaintiffs conclusively allege that "Defendant Cuyahoga County's actions and inactions" violated their constitutional rights. (ECF #1 at ¶ 139.) They also definitely assert that the "policies, practices, and customs . . . were maintained and implemented by Defendant Cuyahoga County . . . and were a moving force behind the violations of those rights." (*Id*. at ¶ 135.) Because the Sixth Circuit considers these allegations to be legal conclusions, the Court can assess their veracity.

## II. This Court Should Reject the Erroneous Conclusions in Paragraphs 135 and 139

### A. The County Did Not Commit the "Underlying Constitutional Violations"

Plaintiffs' first conclusion is incorrect because the County did not commit the alleged underlying constitutional violations. If a constitutional violation even occurred, it was committed by the State. The Sixth Circuit only holds a municipality (or county) liable under 42 U.S.C. § 1983 if the plaintiff establishes an underlying constitutional violation *by the municipality's officials*. *See, e.g.*, *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020). Failure to make such a showing warrants dismissal. *Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023).

The law, however, does not attribute all actions of a municipal employee to their municipal employer. *See, e.g.*, *Williams v. Leslie*, 28 F. App'x 387, 389 (6th Cir. 2002) ("if Williams was not acting as an agent of Pike County when he transferred title to Lacy, Pike County cannot be liable

4

for his actions under § 1983."). Specifically, Ohio law does not attribute prosecutors' actions to their counties when prosecuting criminal charges. It attributes those acts to the State. *See Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993). Plaintiffs concede this point. (ECF #12 at p. 11.) But they argue it "is irrelevant." (*Id.* at p. 10.) Their theory posits that *any* deprivation of rights—regardless of who caused it—can satisfy the first *Monell* prong. But the Northern District of Ohio consistently rejects this notion. For instance, recently in *Bowman v. City of Fairview Park*, Judge Patricia Gaughan dismissed a plaintiff's municipal liability claim against the City of North Olmsted where the plaintiff could not show a deprivation specifically attributable to North Olmsted. No. 1:23 CV 1406, 2024 U.S. Dist. LEXIS 8126, at *10 (N.D. Ohio Jan. 17, 2024).

Without an underlying injury attributable to the County, Plaintiffs cannot satisfy the first prong for municipal liability, and this Court should dismiss their claims.

### B. County Policy Was Not the "Moving Force" Behind the Alleged Deprivation

Plaintiffs' second conclusion is erroneous because Corrigan was not a County policymaker when he allegedly penned the Corrigan Letter. He was a State policymaker. In addition to showing the underlying violation, Plaintiffs must also demonstrate that a municipal policy or custom was "the moving force of the constitutional violation." *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981). Importantly, "[m]unicipal liability attaches *only* where the policy or practice in question is 'attributable to the municipality.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (quoting *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)). This requires the Plaintiffs to show Corrigan acted as a final policymaker for the County "in [the] particular area" relevant to their claim. *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997). Put simply, the Supreme Court "ask[s] whether [the policymaking official] represents the State or the county when he acts in [the disputed] capacity." *Id*. at 785-86.

Ohio law plainly considers prosecuting attorneys to represent the State when acting in their prosecutorial capacity—*i.e.*, when pursuing state criminal charges. *See* R.C. § 309.08(a). Plaintiffs offer no authority on the contrary. Further, "[w]here county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999). The Sixth Circuit treats county officials as arms of the state even when they blatantly disregard state law. *Ermold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019). It only attributes a county official's acts to their county when state law affords some discretion and the official uses that discretion. *Brotherton*, 173 F.3d at 567.

Plaintiffs allege Corrigan (and his predecessors) created an evidentiary policy in the context of criminal prosecutions. Specifically, they claim the policy allowed prosecutors to suppress "'reports' made by 'police departments' and 'statements made by witnesses'" during criminal trials. (ECF #1 at ¶ 68.) And Plaintiffs contend that, at the time of their trial, Ohio law gave local prosecutors significant discretion to withhold material, exculpatory evidence from criminal defendants. They again cite no authority for this proposition. Nor can they. In 2007, Ohio law did not provide such latitude. *See, e.g.*, *State v. Johnston*, 39 Ohio St. 3d 48, 63, 529 N.E.2d 898, 913 (1988) (affirming remand for new trial where the State "withheld evidence [that the court found "material"] supplied by a number of witnesses to the effect that another person . . . may well have been responsible for" the homicides in question). But even if the policy blatantly disobeyed Ohio law in 2007 (it did not), it was not attributable to County. *Ermold*, 936 F.3d at 435.

Because the Corrigan Letter did not create a *County* policy, Plaintiffs cannot satisfy the second prong of the municipal liability test.

### III. Plaintiffs' Custom of Tolerance Claim Fails Because Plaintiffs Do Not Sufficiently Plead A "Clear and Persistent Pattern" or County "Notice"

Although their Complaint mainly asserts an official policy claim against the County, Plaintiffs' Opposition now also highlights a "custom of tolerance" claim. This too fails. To sustain a *Monell* claim for a custom of tolerance or acquiescence, Plaintiffs must show: "(1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [County]; (3) the [County's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [County's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Wallace v. Coffee Cty.*, 852 F. App'x 871, 876 (6th Cir. 2021). To establish the second element, however, Plaintiffs must demonstrate sufficient notice of the activity's illegality preceding their own deprivation. *See, e.g.*, *Austin v. Mosley*, No. 20-12938, 2023 U.S. Dist. LEXIS 54008, at *19 (E.D. Mich. Mar. 29, 2023).

Plaintiffs fail to sufficiently plead the first two elements. First, Plaintiffs only identify twelve instances of improper withholdings over a thirty-two-year period (*i.e.*, between 1975 and 2007) to establish the alleged "ongoing pattern." (ECF #1 at ¶¶ 71-72.) This equates to roughly 0.375 improper withholdings per year—far from a "clear and persistent" pattern.

Second, Plaintiffs do not allege the County *knew* or should have known the alleged misconduct was illegal or unconstitutional. Notably, only four of the twelve instances identified by the Complaint involve a court questioning prosecutorial conduct *prior* to their trial in 2007. (*See id.* at ¶¶ 71(b), (d), (h), 72(a).) In other words, Plaintiffs allege that four cases over a thirty-two-year period placed the County on notice. This is not enough. *See, e.g.*, *Jones v. Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010) ("Although Plaintiff did present evidence that several inmates' medical requests were ignored by jail personnel, including Jones's, a jury could not

reasonably infer from these five incidents alone that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests."). Because Plaintiffs fail to sufficiently allege a "clear and persistent" pattern of illegality and the County's "notice" of such activity, this Court should dismiss Plaintiffs' "custom of tolerance" claim.

## CONCLUSION

For the foregoing reasons, the County respectfully requests the Court dismiss Plaintiffs' claims against it under Rule 12(b)(6).

Respectfully submitted,

*/s/ Patrick J. Lipaj*
BRENDAN D. HEALY (0081225)
PATRICK J. LIPAJ (0100129)
Assistant Prosecuting Attorneys
Cuyahoga County Prosecutor's Office
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio  44113
Tel: (216) 698-6447
Fax: (216) 443-7602
bhealy@prosecutor.cuyahogacounty.us
plipaj@prosecutor.cuyahogacounty.us

*Attorneys for Defendant Cuyahoga County*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that the foregoing Memorandum complies with the page limitations for dispositive motions in unassigned cases, as set forth in Local Rule 7.1(f).

*/s/ Patrick J. Lipaj*
PATRICK J. LIPAJ (0100129)
Assistant Prosecuting Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, a copy of the foregoing *Reply in Support of Defendant Cuyahoga County's Motion to Dismiss for Failure to State a Claim* was filed electronically with the Court. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/ Patrick J. Lipaj*
PATRICK J. LIPAJ (0100129)
Assistant Prosecuting Attorney