**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL SUTTON**, AND **KENNY PHILLIPS**,<br><br>Plaintiffs,<br><br>-vs-<br><br>**DANIEL LENTZ, ET AL.**,<br><br>Defendants. | Case No. 1:23-cv-01878<br><br>Judge Ruiz<br>Magistrate Judge Greenberg<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR COURT TO ORDER RELEASE OF GRAND JURY TRANSCRIPTS** |

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.  The Shooting of May 29, 2006 and the Underlying Criminal Proceedings**

   **A.  The Drive-by Shooting of May 29, 2006 and Plaintiffs' Arrests**

In the early hours of May 29, 2006, Plaintiffs Michael Sutton and Kenny Phillips were riding with two friends in Sutton's new car down Woodland Avenue near 55th Street in Cleveland when they saw a gold vehicle pull up alongside a black Lincoln in front of them and begin firing gunshots into the Lincoln. The gold car then sped away at approximately 100 miles per hour. Compl., Doc. 1, PageID #4–5, ¶ 20. It got away. *Id*., PageID #6, ¶ 29.

Defendants Daniel Lentz and Michael Keane (Cleveland police officers) pulled over Plaintiffs' vehicle and arrested all four occupants for allegedly being involved in the drive-by shooting against the Lincoln. Doc. 1, PageID ##5–6, ¶¶ 25–30. Although Plaintiff Sutton submitted to arrest, Plaintiff Phillips and the other vehicle occupants panicked and attempted to flee on foot but were captured within minutes. *Id*., ¶¶ 26–27. After the arrests, officers searched the area but never found any guns, shell casings, bullets, or other physical evidence to connect Plaintiffs or any occupants of their vehicle to the shooting. *Id*., PageID #6, ¶ 31. The victims of the shooting (who survived) did not see shots coming from Plaintiffs' vehicle. *Id*., ¶ 33. Although not reflected in

Lentz's police report or contemporaneous radio broadcasts, Lentz would later testify at trial that he believed Phillips was shooting at him during the foot pursuit. Ex. 1, Lentz report; Ex. 2, CLE 234, radio broadcast; Ex. 3, 2007 Trial Trans. Excerpts, pp. 737, 739, 771, 832, 846, 847, 975; Ex. 4, 2022 Retrial Trans. Excerpts, pp. 943.

      B.      **Despite the Lack of any Evidence Beyond Defendants' Testimony, Plaintiffs were Indicted and Convicted for Crimes Related to the Drive-By Shooting.**

Despite no evidence that Sutton ever had a gun, on June 8, 2006, he was indicted—with firearm specifications—for attempted murder, felonious assault with a deadly weapon, felonious assault causing serious physical harm, inducing panic, and failing to comply with police orders. Doc. 1, PageID ##7–8, ¶ 41; Ex. 5, Indictments, CC002862–79. On the same date, Phillips was indicted (also with firearm specifications) for attempted murder, felonious assault with a deadly weapon, felonious assault causing serious physical harm, inducing panic, felonious assault on a peace officer (Lentz), attempted felonious assault on a peace officer (Lentz), attempted murder and attempted aggravated murder of a police officer (Lentz). *Id.*; Ex. 5.

At the 2007 trial, Sutton was found guilty of attempted murder, felonious assault, attempted felonious assault, inducing panic, and failure to comply with police orders. Doc. 1, PageID ##10–11, ¶ 57. Phillips was found guilty of attempted murder, felonious assault, attempted felonious assault, felonious assault on a peace officer, attempted felonious assault on a peace officer, with gun specifications. *Id.*, PageID #10, ¶56.

      C.      **After Defendants'** ***Brady*** **Violations Were Revealed, Plaintiffs' Convictions were Reversed, Plaintiffs were Exonerated at Retrial, and Plaintiffs Filed this Lawsuit.**

On March 18, 2021, the Eighth District Court of Appeals vacated the convictions of Sutton and Phillips because exculpatory evidence was withheld in violation of *Brady v. Maryland* and remanded for new trial. Doc. 1, PageID #11, ¶ 63. On September 27, 2022, the second trial concluded when the jury found both Sutton and Phillips not guilty on all counts. *Id.*, ¶ 64. After

their exoneration, Plaintiffs filed the present civil rights lawsuit, which includes claims for: federal and state malicious prosecution (Doc. 1, PageID ##23–24, 26–27, ¶¶ 100–06, 123–27); fabrication of evidence (*id.*, PageID ##22–23, ¶¶ 93–99); *Brady* violations (*id.*, PageID ##24–25, ¶¶ 107–13); willful, wanton, and/or reckless breach of duty (*id.*, PageID #25, ¶¶ 114–17); civil liability for depriving Plaintiffs of civil rights (*id.*, PageID ##25–26, ¶¶ 118–22); abuse of process (*id.*, PageID #27, ¶¶ 128–31); and civil conspiracy (*id.*, PageID #29, ¶¶ 141–45).

## II. The Grand Jury Transcript Will Likely Show That One or More Witnesses Presented False Grand Jury Testimony or Evidence.

Plaintiffs sought general information about the grand jury testimony through Defendants' depositions but received little information because of defense counsel's objections and instructions. Ex. 6, Hartman Dep. Excerpts, pp. 168–69, 177–78, 243–45. Defendant Detective Hartman believes he "was one of the people that presented the case" to the grand jury. *Id.*, p. 168.

### 1. Detective Hartman Admitted That He Asked the Grand Jury to Consider Weapons-Related Charges Against Plaintiff Sutton Despite No Evidence That Sutton Ever Had a Weapon.

No evidence supported Sutton's indictment for firearm offenses. The officers investigating the shooting never found any guns, bullets, or shell casings at the scenes of the drive-by shooting or the foot pursuit. Ex. 4, 2022 Retrial Trans. Excerpts, pp. 1074, 1235, 1272, 1273; Ex. 7, Lentz Dep. Excerpts, p. 261. No one ever found a gun on Sutton (or Phillips) or in the car. Ex. 6, Hartman Dep. Excerpts, p. 183. Lentz did not report seeing Sutton with a gun. Ex. 1, CLE000002–11. Hartman's report, which was based on Lentz's report and talking to Lentz, did not state that anyone saw Sutton with a gun. Ex. 8, CLE000065–67. Instead, Hartman reported that Keane immediately apprehended Sutton when he exited his vehicle, preventing Sutton from hiding any gun if he had one. *Id.*, CLE000065.

Despite no evidence that Sutton had or used a gun, Hartman's report summarized the City prosecutor's recommended charges and requested "that the Cuyahoga County Grand Jury consider

the following additional charges" for Sutton, including carrying a concealed weapon. Ex. 8, CLE000067. At deposition, Hartman admitted that no evidence supported his request for the grand jury to consider a CCW charge against Sutton. Ex. 6, Hartman Dep. Excerpts, pp. 164–68. Hartman also admitted that when he testified before the grand jury, he had no evidence that Sutton had a concealed weapon. *Id*., pp. 169–70. Sutton was later indicted for attempted murder, felonious assault, and attempted felonious assault—all with firearm specifications. Ex. 5, CC002862–73. Thus, Hartman or another grand jury witness falsely testified that Sutton had a firearm.

> 2. **The Evidence Indicates that a Grand Jury Witness Falsely Testified that Plaintiff Phillips Shot at Officer Lentz.**

No contemporaneous investigation record contains a report that Phillips shot at Lentz to justify indicting Phillips for multiple felonies based on shooting at a police officer. Ex. 4, 2022 Retrial Trans. Excerpts, pp. 1088–89. Although Lentz was using the radio dispatch system both in the squad car and during the foot pursuit when gunshots were allegedly fired, he never broadcast that anyone shot at him. *Id*.; Ex. 7, Lentz Dep. Excerpts, p. 244. Lentz did not state in his report that Phillips shot at him. Ex. 1. Lentz wrote that he saw Phillips and another passenger "running with handguns" and that as he was running "through the yards after the three offenders…multiple gun shots lit up the back yard" where Plaintiffs' vehicle had stopped—but he did not write that *Phillips* shot a gun, nor that Phillips shot *at him*. *Id*., CLE 000006. Even if Phillips had fired any shot (which Plaintiffs deny), as Lentz later admitted, there is a difference between shooting *near* an officer and shooting *at* an officer. Ex. 7, p. 275; *see also* Ex. 6, Hartman Dep. Excerpts, p. 107 (felonious assault on officer using gun requires actually pointing gun at officer). Despite the lack of contemporaneous evidence that Phillips shot at Lentz, Lentz repeatedly testified at trial that Phillips and/or another fleeing suspect had shot at him. Ex. 3, 2007 Trial Trans., pp. 737, 739, 771, 832, 846, 847, 975; Ex. 4, 2022 Retrial Trans. Excerpts, pp. 943. Only Phillips was convicted for

offenses related to these allegations. Ex. 3, pp. 1460–61.

Hartman's report stated that Lentz "[b]eliev[ed] he was being fired upon by the suspects" during the foot pursuit. Ex. 8, CLE000065. Hartman's report also showed that the City prosecutor did not consider charges based on Phillips allegedly shooting at Lentz, and Hartman could not explain why he did not recommend that the grand jury consider charges for the alleged shooting at Lentz. Ex. 8, CLE000067; Ex. 6, pp. 103–05, 175, 219–20. This is inconsistent with Hartman's contemporaneous request that the grand jury consider more serious charges for the drive-by shooting, especially as he recognized that shooting at a police officer is a serious offense. Ex. 8, CLE 000067; Ex. 6, pp. 103–05, 175, 219–20.

Yet nine days after both Hartman and the City prosecutor declined to suggest charges for someone shooting at Lentz, Phillips was indicted for four felonies for allegedly shooting at Lentz. *See* Ex. 5. It bears emphasis that no physical evidence was ever found to show that Phillips shot at Lentz (or anyone else). Ex. 4, 2022 Retrial Trans. Excerpts, pp. 1074, 1235, 1272, 1273; Ex. 7, Lentz Dep. Excerpts, p. 261; Ex. 6, Hartman Dep. Excerpts, p. 183.[1] Hartman learned no new information between when he spoke to the City prosecutor and when he spoke to the grand jury. Ex. 6, p. 169, 176. This indicates that Hartman presented false testimony to the grand jury.

    **3.**    **Lentz Contemporaneously Stated on the Radio That He Did Not Know Whether the Suspects Were Firing Out of the Vehicle.**

The police report and trial testimony make clear that the charges against Plaintiffs for the drive-by shooting were based entirely upon statements and testimony of purported eyewitnesses Defendants Lentz and Keane. But Lentz's recorded statements the night of the shooting undermine

---

[1] Hours after Phillips's arrest, after he had been transported in the back of a police car and held at the station without his hands being "bagged" to prevent contamination, his left hand tested positive for a small amount of gunshot residue. Ex. 3, 2007 Trial Trans. Excerpts, pp. 888, 891, 893, 895, 915–18. But both the State's and Phillips's expert witnesses testified that the positive result could have been from contamination. *Id.*, pp. 933–34, 1027–30. Of note, Phillips is right-handed. Doc. 1, PageID #6, Compl., ¶ 32.

his testimony that he actually saw it. Less than an hour after the drive-by shooting, a dispatcher broadcast that she received information from Charity Hospital about two men who were injured in a black Lincoln and asked if any officers were responding. Ex. 2, CLE000234, 19:20–19:40. Lentz broadcast: "I don't know when [or where] it happened but about five cars swerved off the road when they started shooting. I don't know if they were actually shooting out of the car or what. But that might be part of it." *Id.*, 19:40–19:51. This radio broadcast statement—admitting that he did not know "if they were actually shooting out of the car or what," i.e., did not know where the shots were coming from—contradicts his trial testimony that he saw someone in Plaintiffs' vehicle shooting at the black Lincoln. *See* Ex. 3, 2007 Trial Trans. Excerpts, pp. 722–25.

Hartman testified at the 2022 retrial that he listened to this audiorecording when the case was assigned to him and admitted that he had information contradicting Lentz's report but could not recall doing anything to resolve the inconsistency. Ex. 4, 2022 Trial Trans. Excerpts, pp. 1350–51; *see also* Ex. 6, Hartman Dep. Excerpts, pp. 232–38 (admitting that, if Lentz expressed uncertainty about whether gunshots came from suspect vehicle, Hartman would need to conduct follow-up investigation to resolve the inconsistency with Lentz's report).

Given the stark contradiction between Lentz's contemporaneous statement and later testimony, either Lentz (or someone relying on him) likely gave grand jury testimony that Lentz saw the drive-by shooting. The jury in this case may determine that such grand jury testimony is false, especially when considered with eyewitness statements that Lentz was not in a position to see the drive-by shooting—and that the driver of the gold car was the shooter. Ex. 9, Sutton Mot. for New Trial, Exs. A–G. If the jury makes this finding, Lentz's later report and testimony about the drive-by shooting are fabricated evidence.

**III.     The Cuyahoga County Court of Common Pleas Refused to Release the Grand Jury Transcripts.**

On April 8, 2025, in the interest of comity, Plaintiffs filed a petition with the Cuyahoga County Court of Common Pleas seeking the release of the grand jury transcripts. Ex. 1, Petition. On September 5, 2025, the Cuyahoga County Court entered judgment denying the petition but failed to offer any analysis of why the grand jury secrecy factors should apply here. Ex. 10, Judgment Entry. This Court, which is not bound by the state court's judgment, should order disclosure.

## ANALYSIS

**I.     This Court has Authority to Order Disclosure of State Grand Jury Materials.**

This Court is not bound by the Cuyahoga County Court's refusal to order disclosure. The Court's sister district offered a thorough analysis establishing a federal court's authority to order disclosure of state grand jury materials despite a contradictory state court order in *Heeter v. Bowers*, Case No. 2:20-cv-6481, 2025 WL 511281, at **4–7 (S.D. Ohio Feb. 17, 2025). Although "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities[,]" comity principles do not require "that in every case the court in which the grand jury sat should make the final decision whether a request for disclosure…should be granted." *Heeter*, 2025 WL 511281 at *4, quoting *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 226, 230–31 (1979). While "[i]t is appropriate for federal courts to recognize state interests and privileges to the extent that doing so poses 'no substantial cost to substantive and procedural policy,'" this recognition "'does not give the state courts a veto over disclosure in this civil rights case.'" *Id.*, quoting *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir. 1980). The *Heeter* court that federal courts "appear to agree unanimously that the state court's decision on a federal litigant's request for state grand jury material does not bind the federal court." *Heeter*, 2025 WL 511281 at *5, citing *Brunson v. City*

*of Dayton*, 163 F. Supp.2d 919, 921–22 (S.D. Ohio Aug. 21, 2001); *Socialist Workers Party*, 619 F.2d at 644; *Baynes v. Ruderfer*, 234 F. Supp.3d 574, 577 (S.D.N.Y. Feb. 14, 2017); *Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242, 1250 (C.D. Cal. Feb. 27, 2009). Thus, as in *Heeter*, "there is no dispute that this Court has independent authority to order the disclosure of the transcripts as a matter of federal law." *Heeter*, 2025 WL 511281 at *6.

## II. Plaintiffs Have Met All Legal Standards for the Court to Order Disclosure.

### A. Plaintiffs Have Established "Particularized Need" for the Grand Jury Transcripts to Prove Multiple Claims in this Lawsuit.

#### 1. Plaintiffs Have a Particularized Need for the Grand Jury Transcript to Prove Their Ohio and Federal Malicious Prosecution Claims.

Plaintiffs have a particularized need for the grand jury transcript because they are required to rebut the presumption of probable cause conferred by their indictments to prove their malicious prosecution claims. More specifically, both Ohio and federal law require Plaintiffs to show that their prosecutions were initiated without probable cause to prevail on malicious prosecution claims. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015); *Tourlakis v. Beverage Distributors, Inc.*, 2002-Ohio-7252, ¶ 20 (8th Dist.) Grand jury indictments (like those in this case) generally confer a rebuttable presumption of probable cause. *Webb*, 789 F.3d at 659, citing *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2015); *Tourlakis*, 2002-Ohio-7252 at ¶ 24. This presumption can be rebutted for a federal claim by showing that a witness "knowingly or recklessly presented false testimony to the grand jury to obtain the indictment[,]" *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014), or by showing that the grand jury testimony contained misleading statements or material omissions. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Sykes v. Anderson*, 625 F.3d 294, 305–06 (6th Cir. 2010). Similarly, the presumption can be rebutted in an Ohio claim with evidence "that the return of the indictment resulted from perjured testimony or that the Grand Jury Proceedings were otherwise significantly irregular." *Tourlakis*, 2002-Ohio-7252 at ¶ 24,

citing *Deoma v. City of Shaker Heights*, 68 Ohio App.3d 72 (8th Dist. 1990), citing in turn *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 62 (9th Dist. 1977).

To be sure, Plaintiffs do not urge that they have shown particularized need for the grand jury evidence simply because they have made malicious prosecution claims: this Court finds that plaintiffs with malicious prosecution claims have shown particularized need for grand jury transcripts when plaintiffs show a "logical connection" between their claims and what the grand jury transcripts are likely to show based on other evidence. *Wheatt v. City of East Cleveland*, Case No. 1:17-CV-00377, 2017 WL 3392485, at *3 (N.D. Ohio Aug. 8, 2017). As set forth above, Plaintiffs have demonstrated a logical connection between their malicious prosecution claims and the evidence showing that one or more Defendants likely lied to the grand jury.

The Northern District has ordered the Cuyahoga County Court of Common Pleas to release grand jury evidence in § 1983 cases with malicious prosecution claims, finding particularized need based on the plaintiffs' burden to rebut the indictment's presumption of probable cause where plaintiffs made similar evidentiary showings. In *Wheatt*, 2017 WL 3392485, at *1–2, the Court ordered disclosure of grand jury evidence to an exoneree who filed a federal civil rights lawsuit with malicious prosecution claims. The plaintiff alleged that police officers either lied to the grand jury or manipulated a witness to give false testimony and supported this allegation with evidence that officers previously manipulated the witness, including by showing her an overly suggestive photographic lineup. *Id*. at *2–3. The Court agreed that the plaintiff had a particularized need for the transcripts because proving the lack of probable cause was "a crucial element for malicious prosecution claims." *Id.* at *3. As a result, disclosure of the grand jury transcripts was "necessary to avoid injustice." *Id*. Although the officers opposed the plaintiff's motion by arguing that it was based on "mere speculation," the Court disagreed and found that the plaintiff had drawn "a logical

Page **9** of **15**

Case: 1:23-cv-01878-DAR Doc #: 90-1 Filed: 02/05/26 10 of 15. PageID #: 1089

connection" between the claim and information likely to be in the grand jury transcripts based on the evidence, which justified ordering disclosure. *Id*. at *3.

In *Jones v. City of Elyria*, Case No. 1:18-cv-929, 2018 WL 4042352, at *3 (N.D. Ohio Aug. 24, 2018), the Court held consistently with *Wheatt* and ordered disclosure of grand jury evidence to rebut the presumption of probable cause arising from an indictment. The plaintiff, who had filed a federal civil rights action that included state and federal malicious prosecution claims, was previously indicted for assaulting a police officer, obstructing official business, and resisting arrest. The plaintiff alleged that the officers must have presented false grand jury testimony because a neutral third-party eyewitness offered a drastically different version of events. *Id*. at *1–2, 7. The court rejected the officers' argument that the request for disclosure was based on speculation, finding a logical connection between the plaintiff's request and the evidence sought and ordering disclosure to prevent injustice. *Id*. at *7–8. The court noted that grand jury evidence appeared to be "the only way" to challenge the indictment. *Id*. at *8.

*Rodriguez v. City of Cleveland*, Case No. 1:08-cv-1892, 2009 WL 864205, at *4–5 (N.D. Ohio Mar. 30, 2009) presents another example of the Court ordering release of grand jury transcripts to a federal civil rights plaintiff pursuing malicious prosecution claims. The plaintiffs argued that the facts adduced at trial were so inconsistent with a finding of probable cause to support the indictment that they needed the transcripts to show that false evidence was presented to the grand jury. *Id*. at *4. In holding that the plaintiffs showed a particularized need, the court noted that "[i]t is difficult to imagine how the Plaintiffs would be able to rebut the inference of probable cause that exists in this case without the use of the transcripts." *Id*. at *5.

Similarly, in *Anthony Novak v. City of Parma, et al.*, Case No. 1:17-cv-2148-DAP (N.D. Ohio Jul. 30, 2020), the Court cited to *Wheatt* and *Jones* to order disclosure of grand jury

Page 10 of 15

transcripts. Ex. 11, Opinion and Order, Case No. 1:17-cv-02148-DAP, Doc. #85, PageID ##4423–27. The plaintiff, who also brought a civil rights action with malicious prosecution claims, sought the transcripts because he believed officers presented false testimony to the grand jury based on misstatements in warrant affidavits. *Id*., PageID ##4425–26. The Court found that the plaintiff established particularized need for the transcripts to rebut the indictment's presumption of probable cause and prove his malicious prosecution claims. *Id*.

Based on Plaintiffs' burden to rebut the presumption of probable cause arising from the indictment to prove Ohio and federal malicious prosecution claims, the Court should find that Plaintiffs have a particularized need for the transcript, just as the courts found in *Wheatt*, *Jones*, *Rodriguez*, and *Novak*. Like the plaintiffs in each of these cases, Plaintiffs have presented a logical connection between their claims and the likelihood that, based on existing evidence, the transcript will show that grand jury witnesses provided false or misleading testimony. Like the *Wheatt* and *Novak* Plaintiffs, Sutton and Phillips have presented evidence of other inconsistent statements and testimony by the likely grand jury witnesses. As in *Rodriguez*, the facts adduced at Plaintiffs' trial were inconsistent with probable cause for the indictments. Like the *Jones* Plaintiff, Plaintiffs here have presented eyewitness statements that drastically contradict the officers' later testimony. Consistent with each of these cases, disclosure of the grand jury transcript is necessary to avoid injustice in the present case.

> **2. Plaintiffs Have Particularized Need for the Grand Jury Transcript to Prove That the Officers and/or Prosecutors Lied to the Grand Jury, Both to Prove Plaintiffs' Civil Claim for Fabrication of Evidence and to Obtain Impeachment Evidence.**

Disclosing the transcript is further necessary to determine whether fabricated evidence was presented to the grand jury, consistent with the officers' use of fabricated evidence to secure Plaintiffs' initial wrongful conviction and incarceration. Based on the evidence detailed above,

Plaintiffs expect the grand jury transcript to contain fabricated testimony and/or reflect the prosecutors' incorrect understanding of the facts based on the officers' fabrications. Determining whether the officers and prosecutors lied to the grand jury is significant for Plaintiffs' civil claims for fabrication of evidence and for impeachment evidence.

Disclosing the transcript would enable Plaintiffs to hold government officials accountable for giving false testimony or presenting fabricated evidence. Courts find particularized need for the grand jury transcript when it may show that one or more witnesses gave false testimony. In *Knowlton v. Richland Cnty.*, Case No. 1:15-cv-00210, 2016 WL 11803826 (N.D. Ohio Jul. 20, 2016), the Court found particularized need to disclose a police officer's grand jury testimony where the plaintiff pointed to inconsistencies between the officer's statements made before and after his grand jury testimony. *Id*. at *2. *Knowlton* was a civil case against a police officer for fatally shooting a suspect, and the officer's statements and testimony were inconsistent regarding whether the suspect appeared to pull a gun out of his shirt. *Id*. at *1. The Court emphasized that "no one else can testify to these facts," acknowledged that "impeachment and credibility are an important reason to overcome the presumption of secrecy" and found particularized need because "if the testimony is inconsistent, then disclosure is necessary for 'a fair adjudication of the allegations placed in issue[.]'" *Id*. at *2 (internal citations omitted).

Additionally, particularized need exists when the transcripts are needed "to impeach a witness, to refresh his recollection, to test his credibility and the like." *Wurth v. Ermo Marketing Co.*, 125 Ohio App.3d 494, 500 (6th Dist. 1998), quoting *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958). In *Heeter*, 2025 WL 511281, at *6–7, the Court's sister district ordered the Franklin County Court of Common Pleas to disclose grand jury transcripts where the plaintiff in a civil rights case arising from a police shooting showed that the transcripts would likely provide

impeachment evidence against the police officer defendants. *Id*.

The Court should apply *Knowlton* and *Heeter* here to require disclosure. The grand jury transcript is the only evidence that will allow Plaintiffs to determine whether the officers and/or prosecutors lied or otherwise presented fabricated evidence to the grand jury, consistent with later-offered fabrications. Further, the determination of whether Hartman, Lentz, and/or Keane gave false testimony would provide invaluable impeachment evidence in a case where officer testimony was the only trial evidence linking Plaintiffs to any crime.

**B.     Plaintiffs Have Demonstrated that No Interest in Continued Grand Jury Secrecy Remains.**

Federal law affords state grand jury materials the same protections as federal grand jury materials. *Socialist Workers Party*, 619 F.2d at 643–44. When assessing whether grand jury evidence should remain secret, federal courts consider whether any of the following reasons for secrecy apply:

(1) To "prevent the escape of those whose indictment may be contemplated;"
(2) To "[e]nsure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors;"
(3) To "prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it;"
(4) To "encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;"
(5) To "protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation and from the expense of standing trial where there was no probability of guilt."

*Douglas Oil*, 441 U.S. at 219, n. 10 (citations and quotation marks omitted).

None of these factors apply to justify continued secrecy of the requested transcript. The first, second, third, and fifth factors are moot because the indicted individuals have already been tried, convicted, retried, and acquitted. Neither Plaintiff is at risk of pretrial escape under the first factor. Neither Plaintiff could importune grand jurors, suborn perjury, or tamper with witnesses, as

the second and third factors address, because double jeopardy prevents any future trial on these indictments. The fifth factor does not apply because Plaintiffs know they were indicted (and tried—twice) despite their innocence.

The fourth factor is likewise inapposite because the grand jury transcript sought is, upon information and belief, the testimony of longtime law enforcement officer(s) and/or argument of government officials like prosecutors, who routinely provide information to grand juries and do not require confidentiality as inducement to testify. They already hold absolute immunity from § 1983 liability for their grand jury testimony. *Rehberg v. Paulk*, 566 U.S. 356 (2012). In the cases detailed above where the requested transcripts were believed to include grand jury testimony from officers who were civil defendants, the courts found no significant interest in continued secrecy. *See Wheatt,* 2017 WL 3392485 at *3; *Jones*, 2018 WL 4042352 at *8; *Rodriguez*, 2009 WL 864205 at *5; Ex. 11, *Novak*, Doc. #85 at PageID #4426; *Heeter*, 2025 WL 511281 at *7–8.

When the considerations meriting secrecy carry little to no weight, the party seeking grand jury evidence has a correspondingly reduced burden to obtain disclosure. *See Douglas Oil Co.,* 441 U.S. at 223. There is no need for continued secrecy here. Any opposition that merely recites general grand jury secrecy principles must fail because grand jury secrecy is not "some talisman that dissolves all constitutional protections." *State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029, ¶ 69, citing *United States v. Dionisio*, 410 U.S. 1, 11 (1973); *see also Jones*, 2018 WL 4042352 at *8 (ordering disclosure over argument listing "typical policy justifications for the secrecy of grand jury matters"). Petitioners have a particularized need for this grand jury transcript because justice cannot be done in this lawsuit without it.

## CONCLUSION

For the reasons set forth above, Plaintiffs Michael Sutton and Kenny Phillips respectfully request that the Court order the Cuyahoga County Court of Common Pleas to release the transcript

of the 2006 grand jury proceedings in *State of Ohio v. Kenny Phillips, et al.*, Case No. CR-06-481840.

                    Respectfully submitted,

                    */s/ Sarah Gelsomino*
                    FG+G
                    Sarah Gelsomino (0084340)
                    Elizabeth Bonham (0093733)
                    50 Public Square, Suite 1900
                    Cleveland, OH 44113-2205
                    T: 216-241-1430
                    F: 216-621-0427
                    sarah@FGGfirm.com
                    elizabeth@FGGfirm.com

                    Jacqueline Greene (0092733)
                    35 East 7th Street, Suite 201
                    Cincinnati, OH  45202
                    T: 513-572-4200
                    F: 216-621-0427
                    jacqueline@FGGfirm.com

                    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I certify that on February 5, 2026, I filed a copy of the foregoing using the Court's CM/ECF system. All parties will receive notice and service through that system.

                    */s/ Sarah Gelsomino*
                    Sarah Gelsomino (0084340)
                    *One of the Attorneys for Plaintiff*