**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Michael Sutton, *et al.,*** | ) | **Case No. 1:23-CV-01878** |
| | ) | |
| **Plaintiffs,** | ) | **Judge David A. Ruiz** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Daniel Lentz, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

## <u>DEFENDANTS DANIEL LENTZ AND MICHAEL KEANE'S</u><br><u>MEMORANDUM IN SUPPORT OF</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>

---

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................... ii

Issues To Be Decided ................................................................................................................... vi

Summary of Arguments ................................................................................................................ vi

Memorandum in Support ...............................................................................................................1

I.    Introduction ...........................................................................................................................1

II.   Undisputed Facts....................................................................................................................1

      A.   The Miles Avenue vs. King Kennedy Rivalry.....................................................................1

      B.   The Woodland Avenue – East 55th Street Area .....................................................................1

      C.   The Club Moda Incident ......................................................................................................2

      D.   The Woodland Avenue Shooting Incident.............................................................................2

      E.   Officers Lentz/Keane's View And Pursuit Of Sutton Vehicle ..............................................3

      F.   Officer Lentz/Keane's Foot Pursuit Of Suspects.................................................................4

      G.   Lentz Completed The Police Report ....................................................................................5

      H.   Plaintiffs Sutton And Phillips Admit To Hearing Gunshots.................................................6

      I.   Sutton And Phillips Second Trial Acquittal..........................................................................7

III.  Law and Argument .................................................................................................................7

      A.   The Summary Judgment Standard ........................................................................................7

      B.   The Qualified Immunity Standard ........................................................................................7

      C.   Lentz And Keane Are Entitled To Judgment On Count I – Fabrication
          Of Evidence......................................................................................................................... 8

      D.   Lentz And Keane Are Entitled To Judgment On Counts II and VI – Federal
          And State Law Malicious Prosecution .................................................................................14

      E.   Keane And Lentz Are Entitled Judgment on Count III – The Brady Claim.......17

F.  **Officer Lentz and Keane Are Entitled To Judgment On Claim IV – State Law Willful, Wanton, Reckless Claim** ..............................................................18

G.  **Officers Lentz And Keane Are Entitled To Judgment On Claim V – Civil Remedy For Criminal Acts Under R.C. 2307.60(A)(1)** ............................................18

H.  **Officer Keane And Lentz Are Entitled To Judgment On Claim VII – Abuse Of Process** ...........................................................................................................19

**Certificate of Compliance**………………………………………………………………21

## TABLE OF AUTHORITIES

**Cases**

*Alabsi v. City of Cleveland*, No. 1:20-CV-01933-CEH, 2022 WL 875243, at \*4 (N.D.Ohio Mar. 23, 2022) .................................................................................................................................................20

*Anderson v. Massillon,* 134 Ohio St.3d 380, 385, 2012–Ohio–5711, ¶23 ................................................18

*Ash v. Ash*, 72 Ohio St.3d 520, 522 (1995) ....................................................................................14

*Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006) ....................................................8

*Barnes v. Beachwood* (8th Dist.), 2006-Ohio-3948, ¶20 ...................................................................16

*Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) .......................................................................15

*Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016) .............................................................18

*Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ....................................................................9

*Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69–70 (3d Cir. 2017) ........................................13

*Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106, at \*3 (N.D.Ohio Mar. 7, 2012)..........18

*Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 1110, 75 L.Ed.2d 96 (1983) ...............................10

*Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015)............................................................................8

*Brown v. Whirlpool Corp.*, 996 F. Supp.2d 623, 643 (N.D.Ohio 2014) ................................................18

*Burnette v. City of Norton*, No. 5:22-CV-02342, 2026 WL 380547, at \*4 (N.D.Ohio Feb. 11, 2026).......15

*Caraballo v. Cleveland Metro. Sch. Dist.* (8th Dist.), No. 99616, 2013-Ohio-4919, at ¶34........................18

*Caraballo v. Cleveland Metro. Sch. Dist.*, 2013-Ohio-4919, ¶34 (8th Dist.) ..........................................18

*Carey v. Shiley, Inc.*, 32 F. Supp.2d 1093, 1101 (S.D. Iowa 1998) ......................................................10

*Carr v. Johnson*, No. 1:17 CV 620, 2018 WL 6568511, at \*5 (N.D.Ohio Dec. 13, 2018)........................15

*Chappell v. City of Cleveland*, 585 F.3d 901, 912-913 (6th Cir. 2009) ...................................................7

*Chappell v. City of Cleveland*, 585 F.3d 901, 912-913 (6th Cir. 2009); *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).....................................................................................................................................7

*Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) ........................................................8

*Chappell*, 585 F.3d at 914....................................................................................................................13

*Cincinnati Ins. Co. v. Oancea* (6th Dist.), No. L–04–1050, 2004–Ohio–4272, at ¶17 .............................18

*Cincinnati Ins. Co. v. Oancea*, 2004–Ohio–4272, ¶17 (6th Dist.)........................................................18

*City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) ...............................................................9

*Cooper v. City of Columbus, Ohio*, No. 22-3251, 2023 WL 1434055, at \*4 (6th Cir. Feb. 1, 2023) .........12

*Cox v. Oliver*, 2016-Ohio-4575, ¶15 (2d Dist.) .................................................................................20

*D.C. v. Wesby*, 199 L.Ed.2d 453, 138 S.Ct. 577, 586 (2018) .............................................................15

*D.C. v. Wesby*, 583 U.S. 48, 64 (2018) ............................................................................................9

*D.C. v. Wesby*, 583 U.S. 48, 64 (2018); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) .................................9

*Davenport v. City of Little Rock*, 142 F.4th 1036, 1044 (8th Cir. 2025)................................................10

*Depew v. City of Solon*, No. 1:22-CV-01251, 2023 WL 2242795, at \*8 (N.D.Ohio Feb. 27, 2023) .........15

*Dillon v. Hamlin*, 718 F. Supp.3d 733, 745 (S.D.Ohio 2024)...............................................................14

*Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356 (1994)......................................................18

*Fineout v. Kostanko*, 780 F. App'x 317, 329 (6th Cir. 2019)...............................................................15

*Fondale v. Guernsey Cty. Children's Servs.*(5th Dist.), 2012-Ohio-3621, ¶31........................................18

*France v. Lucas*, 836 F.3d 612, 632 (6th Cir. 2016)....................................................................9

*Gabrion v. United States*, 43 F.4th 569, 582 (6th Cir. 2022)....................................................17

*Garrett v. Fisher Titus Hosp.*, 318 F. Supp.2d 562, 574 (N.D.Ohio 2004) ..............................15

*Griggy v. Cuyahoga Falls* (9th Dist.), No. 22743, 2006–Ohio–252, ¶8 ...................................18

*Griggy v. Cuyahoga Falls*, 2006–Ohio–252, ¶8 (9th Dist.) .....................................................18

*Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005)........................................................................15

*Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)................................................................13

*Hicks v. Scott*, 958 F.3d 421, 437 (6th Cir. 2020).....................................................................13

*Huff v. Mahajan*, No. 1:20-CV-2499, 2022 WL 3921094, at *5 (N.D.Ohio Aug. 31, 2022).......................19

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991)...............................................................................8

*Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020)..............................................14

*Jones v. Vill. of Highland Hills*, No. 1:20-CV-2475, 2021 WL 5589313, at *7 (N.D.Ohio Nov. 30, 2021) 8

*Jordan v. Howard*, 987 F.3d 537, 546 (6th Cir. 2021) .............................................................12

*Kisela v. Hughes*, 584 U.S. 100, 104 (2018)...............................................................................9

*LeFever v. Ferguson*, 567 F. App'x 426, 430 (6th Cir. 2014).................................................10

*Levey & Co. v. Oravecz*, 2004-Ohio-3418, ¶8 (9th Dist.).........................................................19

*Lopez v. Foerster*, 2022 WL 910575, at *4 (6th Cir. 2022)........................................................9

*Marinkovic v. Hazelwood*, No. 1:19CV1710, 2021 WL 1165726, at *9 (N.D.Ohio Mar. 26, 2021) ...........7

*Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) ..................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)........................................................................................................13

*Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998).......................................................8

*Moore v. City of Memphis*, 853 F.3d 866, 871–72 (6th Cir. 2017)...........................................12

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015)....................................................................................9

*Neal v. Oilfield Instrumentation, USA*, No. 4:13CV00741 BSM, 2015 WL 14103327, at *3 (E.D.Ark. Jan. 29, 2015) ...............................................................................................11

*Nelson v. City of Davis*, 571 F.3d 924 (9th Cir. 2009)...............................................................11

*Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022).............................................16

*O'Donnell v. Yezzo*, No. 21-3396, 2022 WL 130885, at *9 (6th Cir. Jan. 14, 2022)................17

*Palivoda v. Felix*, 2011-Ohio-5231, ¶37 (11th Dist.)...............................................................19

*Palivoda*, 2011-Ohio-5231, ¶24.................................................................................................19

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)........................................................................8

*Portner v. CICA SA-BO, Inc.*, 357 F. Supp. 2d 1172, 1176 (D.Minn. 2005)............................10

*Presnall v. Huey* [657 F. App'x 508, 512 (6th Cir. 2016)........................................................12

*Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)................................................................10

*Prosser*, 70 F.3d at 1008 ...........................................................................................................11

*Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 2023 WL 107973, *3 (6th Cir. 2023) .............8

*Robbins*, 72 Ohio App.3d at 363...............................................................................................16

*Robinson v. Barrow*, No. 1:11–CV–01609, 2011 WL 4631765, at *2 (N.D.Ohio Oct. 3, 2011) ...............18

*Rogers v. Barbera*, 170 Ohio St. 241 syllabus ¶1, 164 N.E.2d 162 (1960) ..............................14

*Rogers v. Barbera*, 170 Ohio St. 241, 241 (1960) ....................................................................14

iv

*Sawyer v. Boone Cnty., KY*, No. 2:22-CV-00071-GFVT, 2024 WL 4860828, at *18 (E.D.Ky. Nov. 21, 2024) ........................................................................................................................................... 10

*Scott v. Harris*, 550 U.S. 372, 380-381 (2007) ........................................................................................ 7

*Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) ........................................................................... 8

*Smith v. Jones*, No. 1:13 CV 744, 2015 WL 12748014, at *4 (N.D.Ohio June 17, 2015) ........................ 18

*Snow v. Nelson*, 634 F. App'x 151, 157 (6th Cir. 2015) ...................................................................... 15

*Snow*, 634 F. App'x at 157 ..................................................................................................................... 16

*Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ................................................................ 10

*Stanley v. City of Norton*, 124 F. App'x 305, 310 (6th Cir. 2005) ..................................................... 15

*Stanton v. Sims*, 571 U.S. 3, 6, (2013) .................................................................................................. 8

*Strickler* at 281 ................................................................................................................................... 17

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) .............................................................................. 17

*Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir.2010) ...................................................................... 14

*Tablack v. Wellman* (7th Dist.), 2006-Ohio-4688, ¶¶ 141-142 ......................................................... 19

*Tablack v. Wellman*, 2006-Ohio-4688, ¶¶ 141-142 (7th Dist.) ....................................................... 19

*Thomason v. AT & T*, 2018-Ohio-4914, ¶36 (7th Dist.) ................................................................... 19

*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ...................... 17

*Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1096, 166 L.Ed.2d 973 (2007) ................................. 14

*Ward v. Cnty. of Cuyahoga*, 721 F. Supp.2d 677, 694 (N.D.Ohio 2010) ........................................... 18

*Waseleski v. City of Brooklyn*, No. 1:23-CV-00548, 2025 WL 896097, at *11 (N.D.Ohio Mar. 24, 2025) ......................................................................................................................................... 14

*Wesby* at 64 ......................................................................................................................................... 9

*White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 7640932, at *12 (N.D.Ohio Dec. 23, 2020) .. 15

*Wiggins v. DuPont*, No. 1:17-CV-1107, 2018 WL 2364946, at *9 (N.D.Ohio May 24, 2018) ................. 18

*Williams v. City of Chattanooga, Tennessee*, 772 F. App'x 277, 280 (6th Cir. 2019) ............................ 9

*Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) ....................................................................... 8

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 1994-Ohio-503, 68 Ohio St.3d 294, syllabus ¶1 ........ 19

## Statutes

Ohio Revised Code 2744.02 ................................................................................................................ vii

R.C. § 2744.03(A)(6) ............................................................................................................................ 18

R.C. 2307.60(A) ............................................................................................................................. 18, 19

**Issues To Be Decided**

1. Whether Defendant Officers Keane and Lentz are entitled to qualified immunity as a matter of law on Plaintiffs' *Brady* claim?

2. Whether Defendant Officers Keane and Lentz are entitled to qualified immunity on Plaintiffs' fabrication of evidence claim?

3. Whether Defendant Officers Keane and Lentz are entitled to qualified immunity on Plaintiffs' federal malicious prosecution claim?

4. Whether Ohio law permits Plaintiffs to pursue a "negligence, reckless, wanton, and/or willful" claim against the Defendant Officers Keane and Lentz?

5. Whether Ohio law permits Plaintiffs to pursue a malicious prosecution claim against the Defendant Officers Keane and Lentz?

6. Whether Ohio law permits Plaintiffs to pursue an abuse of process claim against the Defendant Officers Keane and Lentz?

7. Whether Ohio law permits Plaintiffs to pursue a civil claim under R.C. 2307.60(A)(1).

**Summary Of Arguments**

1. Plaintiffs' *Brady* claim fails as a matter of law because the Officers' alleged mistaken perception of gunshots coming from the Sutton vehicle was reasonably justified by the facts that (a) the Sutton vehicle was travelling directly behind the alleged gold car at the time of the shooting, (b) the Sutton vehicle fled when the Officers attempted to pull them over, (c) the occupants of the Sutton vehicle – including Sutton and Phillips – bailed out of their car and fled on foot, (d) gunshots were fired in the vicinity of the Officers during their foot pursuit, (e) Phillips admittedly threw an object from his hand into a grass field during the foot pursuit, and (f) both Phillips and Sutton's car tested positive for gunshot residue after the shooting incident.

2. Plaintiffs' fabrication of evidence claim fails as a matter of law because (a) the location of the Officers' vehicle *prior* to the shooting incident is immaterial to the undisputed fact that a shooting incident occurred and the Officers saw it, (b) the mere mistaken perception at night of which car the gunshots came from is not sufficient to constitute a fabrication of evidence, (c) since the Plaintiffs' admissions at trial along with the real-time audio recording of Officer Keane confirm that gunshots were fired during the foot pursuit of Plaintiffs, Plaintiffs cannot now introduce contrary evidence to impeach themselves, and (d) the mere mistaken perception at night of Phillips throwing a gun (when he allegedly

vi

threw a bag of marijuana) into a grass field is not sufficient to constitute a fabrication of evidence.

3. Plaintiffs' state and federal malicious prosecution claims fail because

4. Ohio Revised Code 2744.02 bars "negligence" claims against the Defendant Officers.  And Ohio law does not recognize a "reckless, wanton, or willful" cause of action.  Rather, these are elements of conduct to prove certain designated causes of action.

5. Plaintiffs' abuse of process claim fails because (a) this claim is barred by the statute of limitations, (b) neither Officers Lentz nor Keane instituted a legal proceeding against Sutton or Phillips, and (c) there is no evidence of an "ulterior motive" on the part of Officers Lentz and Keane.

6. Plaintiffs' R.C. 2307.60(A) claim (civil remedy for injury by criminal act of another) fails because Officers Lentz and Keane did not "knowingly deprive, conspire or attempt to deprive [Plaintiffs] of a constitutional or statutory right.

## MEMORANDUM IN SUPPORT

### I.        INTRODUCTION.

This lawsuit arises from a May 28, 2006, car shooting on Woodland Avenue, a short distance east of its intersection with East 55th Street in Cleveland, Ohio. At 3:00 a.m. in the morning, Plaintiffs Sutton and Phillips and two of their friends were in a white automobile which pulled alongside and opened gunfire at a black Lincoln automobile. Plaintiffs were charged and found guilty of various criminal charges. Years later, Plaintiffs were granted a new trial and subsequently acquitted of the charges. They bring this § 1983 claim alleging that Defendant Officers Lentz and Keane, fabricated evidence which led to Plaintiffs' initial conviction.

### II.       UNDISPUTED FACTS.

#### A.        The Miles Avenue vs. King Kennedy Rivalry.

In 2006, Michael Sutton, Kenny Phillips, Lavelle Gibson, Jr., Willie Wayne Moore, Vanetta Redding, Dovonna Corothers, Akeem Tolbert, Michael Gott, Maelynn Colvin, and Marsean Watters were all friends from the Miles Avenue neighborhood ("Miles Ave.").[1] At that time, the King Kennedy neighborhood had a bitter rivalry with the Miles Avenue neighborhood.[2] The King Kennedy and Miles Ave. groups were often involved in physical altercations at school, on the streets, and other locations.[3]

#### B.        The Woodland Avenue – East 55th Street Area.

Woodland Ave. runs east and west, while East 55th St. runs north and south, through Cleveland. Woodland Ave. and East 55th St. each have four lanes of travel (two lanes running each direction), at their intersection. The presence of a Marathon gas station, a Shell gas station, a

---

[1] Doc #: 110-1, PageID # 3742-3747; Doc #: 65-1, PageID # 427-429, 432-434, 439-442, 443-447, 452-456, 479-480.

[2] Doc #: 105-1, PageID # 2779-2780; Doc #: 108-1, PageID # 3414.

[3] *Id. See also* Doc #: 110-1, PageID # 3749-3750.

Rally's restaurant, parking areas, and its closeness to King Kennedy made this area a popular spot for large crowds late at night after the bars and clubs closed.[4] It was not unusual for gun shots, crime and police pursuit (in foot and in car) of suspects to occur in this area.[5]

### C.       The Club Moda Incident.

On May 28, 2006, several Miles Ave. people met at the Club Moda. The Plaintiffs and their friends got into the club, danced and smoked marijuana.[6] While at the club, some King Kennedy men started a physical altercation with the Miles Ave. group.[7] However, the club's security guards broke up the altercation and kicked the King Kennedy group out of the club.[8] Shortly thereafter, Willie Wayne Moore (Plaintiffs' friend) got jumped and beaten up by the King Kennedy group.[9]

### D.       The Woodland Avenue Shooting Incident.

After the club closed (*i.e.* 2:30 a.m.), the Miles Ave. group split-up into four cars and followed each other from Club Moda to the Shell gas station on East 55th St., just south of Woodland Ave. ("the Intersection").[10] Plaintiff Sutton  drove north on East 55th St. to meet his friends at the Shell gas station.[11] After getting food, the 4-car group proceeded north on East 55th St. to the Intersection and turned east on to Woodland Ave.[12] As they turned onto Woodland, all the Miles Ave. witnesses testified that:

- As their caravan of cars turned east on Woodland, they were in the left lane of travel with a gold car (containing Willie Wayne Moore and his brother) as the first car, and a white car (containing Plaintiff Sutton, Plaintiff Phillips, Creel

---

[4] Doc #: 107-1, PageID # 3137-3139, 3160-3168;  *See also* Exhibit B to Jones' deposition.

[5] Doc #: 107-1, PageID # 3134-3136.

[6] Doc #: 105-1, PageID # 2788-2792, 2794; Doc #: 111-1, PageID # 3903, 3981.

[7] Doc #: 105-1, PageID # 2794-2795; See also Doc #: 111-1, PageID # 3921-3922.

[8] *Id.*

[9] Doc #: 105-1, PageID # 2795-2797; Doc #: 96-1, PageID # 1419-1423; Doc #: 108-1, PageID # 3423-3425; Doc #: 109-1, PageID # 3614-3616, 3615-3616.

[10] Doc #: 105-1, PageID # 2797-2799; Doc #: 111-1, PageID # 3930; Doc #: 96-1, PageID # 1435-1436; Doc #: 108-1, PageID # 3432-3433, 3435-3437; Doc #: 109-1, PageID # 3617-3619.

[11] Doc #: 116-1, PageID # 5460-5461.

[12] Doc #: 111-1, PageID # 3939.

and Tidmore) as the second car.[13] The occupants of the remaining vehicles in the caravan disagree on who was directly behind the white Sutton vehicle.[14]

- A black Lincoln car was in the right lane of travel also heading east on Woodland.[15]

- As the gold car (*i.e.* Willie Wayne's car), and Sutton's vehicle passed the black Lincoln car, the gold car allegedly fired multiple gun shots at the black Lincoln.[16]  The gold car then sped east on Woodland at a high rate of speed.[17]

- Within seconds, Officers Lentz and Keane's police car (with lights and siren activated), appeared behind the white Sutton vehicle.[18] Everyone in the Sutton car panicked when Officers Lentz/Keane attempted to pull them over.[19] The white Sutton vehicle fled east on Woodland Ave. at high speed [20]

### E.        <u>Officers Lentz/Keane's View and Pursuit of Sutton Vehicle</u>.

Officers Keane and Lentz were in their patrol car when shots were fired at the black Lincoln. There is a dispute over whether Keane/Lentz were in the Marathon gas station parking lot (northeast corner of the Intersection) or on East 55th St. entering the Intersection immediately before the shots occurred.[21] Regardless of their position, Keane/Lentz both believe they saw Sutton's white car fire gunshots at the black Lincoln car,[22] while the gold car was in the right lane *in front of* the black Lincoln.[23] Officer Keane activated his lights and siren while Lentz

---

[13] Doc #: 108-1, PageID # 3440-3442.

[14] Colvin, Redding, and Corothers claim they were behind the Sutton vehicle. (*Id.*; Doc #: 96-1, PageID # 1435-1436; Doc #: 109-1, PageID # 3622-3623.).

[15] Doc #: 105-1, PageID # 2811-2814; Doc #: 65-1, PageID # 536-538, 540-541.

[16] Doc #: 105-1, PageID # 2811-2814; Doc #: 111-1, PageID # 3955-3956; Doc #: 65-1, PageID # 536-538, 540-541; Doc #: 108-1, PageID # 3472-3745, 3476-3477; Doc #: 107-1, PageID # 3175-3178, 3180; *See also* Exhibit B to Jones' deposition located at Doc # 107-2, PageID # 3346.

[17] Doc #: 65-1, PageID # 542-543, 545.

[18] Doc #: 105-1, PageID # 2818-2823; Doc #: 111-1, PageID # 3962; Doc #: 65-1, PageID # 543, 551; Doc #: 108-1, PageID # 3455-3458; Doc #: 109-1, PageID # 3639-3641.

[19] Doc #: 65-1, PageID # 557.

[20] Doc #: 105-1, PageID # 2818-2823; Doc #: 65-1, PageID # 543, 550; *See also* Exhibit C of Sutton's deposition located at Doc #: 65-4, PageID # 641.

[21] Sutton and Jones testified Officers Keane/Lentz were in the Marathon parking lot. Doc. # 65-1, PageID # 553; Doc #: 107-1, PageID # 3183. Keane and Lentz testified they were on 55th Street turning on to Woodland following a white vehicle. Doc #: 104-1, PageID # 2571; Doc #: 106-1, PageID #2936.

[22] Doc #: 104-1, PageID # 2576-2578, 2580, 2583, 2600-2601; Doc #: 106-1, PageID # 2932-2935.

[23] Doc #: 104-1, PageID # 2581-2582, 2598-2600; Doc #: 106-1, PageID # 2937-2939.

broadcasted on police radio "four males shooting out of car".[24] At the same time, the gold car took off at a high rate of speed when the gun shots were fired.[25]

Officers Lentz and Keane pursued the Sutton vehicle east on Woodland Ave.[26] Sutton's vehicle turned south on East 65th St., drove a short distance and stopped.[27] Officers Lentz/Keane "were on their rear-end" when the Sutton vehicle stopped.[28]

### F. Officer Lentz/Keane's Foot Pursuit of Suspects.

Upon stopping, all four men in the Sutton vehicle bailed out of their car and ran in different directions. Officers Keane and Lentz simultaneously jumped out of their car and gave chase.[29] Officer Keane quickly caught and handcuffed Plaintiff Sutton within 20 feet of his car.[30]

As the remaining three suspects (Creel, Phillips and Tidmore), exited the passenger side of their vehicle, Officer Lentz saw silhouettes of guns in the hands of two suspects.[31] Lentz chased those two suspects behind a house into the heavily wooded area. As he got behind the house (within 10 to 20 seconds from exiting his vehicle), Lentz saw gunshot flashes through bushes and heard gunshots.[32] There is no question gun shots were fired during the foot pursuit because:

- Plaintiffs Sutton and Phillips both admit they heard gunshots during the foot pursuit;[33]
- Defendants Keane and Lentz both heard gunshots during the foot pursuit; [34] and
- Defendant Keane broadcasted in real-time to dispatch "*more shots fired, foot pursuit.*"[35]

---

[24] See Cleveland Police audio recording of dispatch at 02:48-02:52.
[25] Doc #: 104-1, PageID # 2581-2582, 2598-2600; Doc #: 106-1, PageID # 2937-2940.
[26] Doc #: 104-1, PageID # 2584-2587.
[27] Doc #: 106-1, PageID # 2959.
[28] Doc #: 104-1, PageID # 2605.
[29] Doc #: 106-1, PageID # 2961-2962.
[30] Doc #: 106-1, PageID # 2961-2962.
[31] Doc #: 104-1, PageID # 2628-2629.
[32] Doc #: 104-1, PageID # 2612; 2633-2644.
[33] Doc #: 111-1, PageID # 3974-3977; Doc #: 65-1, PageID # 566-568; Doc# 116-1, PageID # 5422-5423; Doc# 116-1, PageID # 5496.
[34] Doc #: 106-1, PageID # 2971-2972.
[35] *Id.*; See also Keane Declaration at Doc #: 117-1, PageID # 5785-5787, and Police audio recording manually filed with Court.

While Lentz covered his head and ran from the back of the house,[36] two of the suspects (Plaintiff Phillips and Deante Creel), appeared from behind a bush and they "basically ran into each other." So, Lentz continued his foot pursuit.

Phillips had marijuana on his body. Since he did not want to get caught with marijuana, he threw the marijuana into a field as he was running from Officer Lentz.[37] Officer Lentz saw Phillips throw an item into a grassy field. It was dark and Lentz thought the item Phillips threw into the field was a gun.[38]  After discarding the item, Plaintiff Phillips split away from Creel and ran back into the woods. Officer Lentz meanwhile continued to chase Deante Creel and caught him near the East 65th St – Beaver Ave. intersection.[39] As Lentz walked Creel back up 65th, Lentz saw Keane chase Plaintiff Phillips back toward the white Sutton vehicle.[40] Lentz witnessed Keane limp due to a torn calf muscle. So, Lentz handed Creel off to a different zone car, gave chase, and ultimately captured Plaintiff Phillips on East 69th Street.[41]  Two other Officers (Jones and Lundy), captured the final occupant from the Sutton vehicle a couple blocks away in the King Kennedy neighborhood.[42]  After all suspects were secured, Lentz and other police officers searched behind the houses along East 65th Street and in the field where Plaintiff Phillips had thrown the item. Unfortunately, no gun, marijuana or other items were found.[43]

### G.   Lentz Completed The Police Report.

Officer Lentz wrote a police report describing the events that transpired that night.[44] Lentz also spoke to Detective Carl Hartman the next day and drew a map describing the

---

[36] Doc #: 104-1, PageID # 2632-2633.
[37] Doc #: 111-1, PageID # 3983-3984.
[38] Doc #: 104-1, PageID # 2641-2643.
[39] Doc #: 104-1, PageID # 2634-2635, 2637-2638.
[40] Doc #: 104-1, PageID # 2646-2650.
[41] Doc #: 104-1, PageID # 2650-2651.
[42] Doc #: 107-1, PageID # 3213-3214; Doc #: 102-1, PageID # 2135-2136.
[43] Doc #: 104-1, PageID # 2651-2654.
[44] Doc #: 104-1, PageID # 2655.

incident.[45] But Lentz never presented any information to a prosecutor or recommended charges be filed.

Officer Keane was taken to the hospital while other officers searched for evidence in the field.[46] Keane remained off work for approximately one month due to his injury.[47] Thus, Keane never made a report, spoke to any detective, or played any role in bringing charges against Sutton and Phillips.[48]

### H. Plaintiffs Sutton and Phillips Admit To Hearing Gunshots.

Sutton and Phillips were charged and tried on various felonious assault charges and both testified at trial that gunshots were fired during the foot pursuit.[49] Indeed, Phillips testified:

> Q:  Did you hear gunshots when you were out running away from the Police?
> A:  Yes.
> Q:  You did.  And were they around you?
> A:  No. They was like on the side.
> Q:  How many gunshots?
> A:  At least like two or one.
> ***
> Q:  Did you see any flashing from these gunshots?
> A:  I know it was a cop.[50]
> ***
> Q:  And you testified that Officer Jones actually shot at one of you guys?
> A:  Yes.[51]

### I. Sutton and Phillips Second Trial Acquittal.

Years after their conviction, Plaintiffs Sutton/Phillips were granted a new trial based on former police officer Jones (who was then a convicted felon in prison), giving a statement that he heard no gunshots during the foot pursuit of the occupants of the Sutton vehicle, and other

---

[45] Doc #: 104-1, PageID # 2658-2659;  *See also* Exhibit 2 to Lentz's deposition at Doc #: 104-2, PageID # 2732.
[46] Doc #: 106-1, PageID  # 2985; Doc #: 104-1, PageID # 2657.
[47] Doc #: 106-1, PageID # 2993.
[48] Doc #: 106-1, PageID # 2990-2993.
[49] Doc #: 116-1, PageID # 5496; Doc# 116-1, PageID # 5422-5423.
[50] Doc #: 116-1, PageID # 5438.
[51] Doc #: 116-1, PageID # 5449.

6

conflicting testimony from Officers Lentz/Keane.  At their second trial, Sutton and Phillips did not testify – and the trial court would not permit the prosecutor to read Phillips or Sutton's testimony from the first trial.[52]  So, the second-trial jury did not hear Phillips or Sutton's admissions that they heard gunshots during the foot pursuit.

After acquittal, Plaintiffs filed this lawsuit based primarily on the allegation that Officers Letnz and Keane fabricated the following facts:

    i.      That they were following the Sutton vehicle north on East 55th Street before it turned east on Woodland.

    ii.     That Lentz/Keane saw and heard gunfire from the Sutton vehicle while on Woodland.

    iii.    That Lentz saw occupants of the Sutton vehicle carry a gun when he/they got out of the car and fled on foot.  And Lentz saw a suspect throw an object in a grass field while fleeing on foot.

    iv.    Lentz saw gunfire flashes while chasing suspects and he thought they were firing at him.[53]

## III.    <u>LAW AND ARGUMENT</u>.

### A.    <u>The Summary Judgment Standard</u>.

Plaintiffs must present specific evidence demonstrating a "genuine" dispute of material fact.[54]  Factual disputes that are irrelevant or unnecessary will not preclude the entry of summary judgment."[55]  Irrelevant and unnecessary aptly describes Plaintiffs' evidence.

### B.    <u>The Qualified Immunity Standard</u>.

The doctrine of qualified immunity shields "government officials performing discretionary functions" from liability "insofar as their conduct does not violate clearly established statutory or

---

[52] See the trial court journal entry dated 9-16-2022 attached as Exhibit A.

[53] Doc #: 1, PageID # 7.

[54] *Chappell v.  City of Cleveland*, 585 F.3d 901, 912-913 (6th Cir. 2009); *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).

[55] *Marinkovic v. Hazelwood*, No. 1:19CV1710, 2021 WL 1165726, at *9 (N.D.Ohio Mar. 26, 2021).

constitutional rights of which a reasonable person would have known."[56] Whether qualified immunity applies depends on whether: (1) the public official's conduct violated a constitutional right; and (2) that right was clearly established at the time.[57]  The burden is on the plaintiff to show that the answer to both questions is "Yes."[58]  If either answer is "No," qualified immunity shields the defendant officer from liability.[59]  If a plaintiff fails to establish either prong—(1) a violation of (2) a clearly established right—the defendant is entitled to judgment as a matter of law.[60]  If the plaintiff cannot make both showings, the officer is entitled to qualified immunity.[61]

"While acting in his role of law enforcement officer, [defendant] presumptively receives immunity for acts committed in the course of his duties."[62]  Thus, "[w]hen a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity."[63]

"The protection of qualified immunity applies regardless of whether the government official's error is `a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"[64] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"[65]   This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.[66]

---

[56] *Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 2023 WL 107973, *3 (6th Cir. 2023).
[57] *Jones v. Vill. of Highland Hills*, No. 1:20-CV-2475, 2021 WL 5589313, at *7 (N.D.Ohio Nov. 30, 2021); *Puskas, id.*; *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021).
[58] *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).
[59] *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).
[60] *Chappell, supra*, 585 F.3d at 907.
[61] *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015).
[62] *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998).
[63] *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006).
[64] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[65] *Stanton v. Sims*, 571 U.S. 3, 6, (2013).
[66] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

8

"[T]he clearly established right must be defined with specificity. `This Court has repeatedly told courts ... not to define clearly established law at a high level of generality.'"[67]  "Specificity" is especially important in the Fourth Amendment context.[68] "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."[69] The dispositive question is "whether the violative nature of *particular* conduct is clearly established." Thus, we have stressed the need to "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment."[70]

Finally, "[e]ach defendant's liability must be assessed individually based on his own actions."[71]  Section 1983 does not permit a plaintiff to hold all state actors who are tangentially tied to a constitutional violation jointly liable for each other's conduct. Rather, the § 1983 plaintiff must adequately connect each defendant's *personal* actions to the violation.[72]

### C.  Lentz And Keane Are Entitled To Judgment On Count I - Fabrication Of Evidence.

Plaintiffs allege that Officers Lentz and Keane "fabricated evidence, including without limitation, fabricated police reports, fabricated statements, and fabricated testimony offered at Plaintiffs' trial, in order to justify the arrest of Plaintiffs and in order to secure their conviction."

#### 1.  Both Movants are entitled to absolute immunity for their trial testimony.

To the extent Plaintiffs allege that Lentz and Keane fabricated trial testimony, they're entitled to absolute immunity. "Absolute immunity shields all testimony given in judicial

---

[67] *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).
[68] *D.C. v. Wesby*, 583 U.S. 48, 64 (2018); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).
[69] *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).
[70] *Wesby* at 64.
[71] *Williams v. City of Chattanooga, Tennessee*, 772 F. App'x 277, 280 (6th Cir. 2019).
[72] *Lopez v. Foerster*, 2022 WL 910575, at *4 (6th Cir. 2022); *France v. Lucas*, 836 F.3d 612, 632 (6th Cir. 2016).

proceedings, including perjured testimony."[73] "This immunity to extends to testimony that is improper, based upon incomplete or even clearly false information, or is in any way deficient or odious."[74]

### 2. Keane did not violate Plaintiffs' constitutional right to fair trial.

It is undisputed that Keane did not prepare any police reports or witness statements.[75] There is literally no activity which could serve as a basis for a fabrication claim against Keane.

### 3. Lentz did not violate Plaintiffs' constitutional right to fair trial.

Plaintiffs claim that Lentz's report contains fabrications that he saw "multiple gunshots lit up the backyard" during the foot pursuit.[76] But this statement is not a fabrication because Plaintiffs Sutton and Phillips both admitted under oath at trial that they heard gunshots during the foot pursuit.[77] And their admissions are corroborated by Officer Keane's testimony that he heard gunshots during the foot pursuit,[78] and Keane's real-time broadcast to dispatch of "more shots fired, foot pursuit."[79]

Plaintiffs try to overcome their own sworn trial testimony by relying on former police officer and convicted felon Jones who claims that he did not hear gunshots during the foot pursuit. But a party opposing summary judgment cannot avoid summary judgment by contradicting his own prior testimony to create an issue of fact.[80] Stated another way, a party ought not be allowed

---

[73] *LeFever v. Ferguson*, 567 F. App'x 426, 430 (6th Cir. 2014); *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 1110, 75 L.Ed.2d 96 (1983); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999).

[74] *Sawyer v. Boone Cnty., KY*, No. 2:22-CV-00071-GFVT, 2024 WL 4860828, at *18 (E.D.Ky. Nov. 21, 2024).

[75] Doc #: 106-1, PageID # 2990-2993.

[76] Lentz's Field Report at Doc# 104-2, PageID# 2737-2738.

[77] Doc #: 111-1, PageID # 3952, 3974-3977; Doc #: 65-1, PageID # 566-568; Doc #: 116-1, PageID #5496; Doc #: 116-1, PageID # 5422-5423.

[78] Doc #: 106-1, PageID # 2971-2972.

[79] *Id.*; *See also* Declaration of Keane at Doc#117-1, PageID#5785, and the manually filed Cleveland Police audio recording at 03:29.

[80] *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *Davenport v. City of Little Rock*, 142 F.4th 1036, 1044 (8th Cir. 2025) (Lloyd admitted to pointing the gun at Thomas, under oath, at his combined plea and sentencing hearing. His later statements to the contrary do not create a genuine dispute of material fact); *Portner v. CICA SA-BO, Inc.*, 357 F. Supp. 2d 1172, 1176 (D.Minn. 2005); *Carey v. Shiley, Inc.*, 32 F. Supp.2d 1093, 1101 (S.D. Iowa 1998)

to manufacture a bogus dispute with himself to defeat summary judgment.[81] That principle extends to cases in which a plaintiff attempts to avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony.[82]

Further, the mere fact that Officer Jones did not hear any shots does not raise a genuine issue of fact on summary judgment. This principle was addressed in *Chappell, supra*:

> First, the three witnesses' failure to hear the "Cleveland Police" announcements does not refute the detectives' testimony that they in fact made several such announcements; it establishes only that the witnesses didn't hear the announcements. In other words, the discrepancy doesn't actually raise a genuine dispute of fact. Indeed, even though, [the three occupants] …may have been in a position to hear the announcements, it is likely they were paying attention to other matters. Specifically, Melvin Chappell and Jones were talking with each other on the porch. ROA 73, Jones dep. pp. 18–20. And Smith was occupied talking with Dorothy Chappell in the rear driveway. ROA 63–5, Smith dep. pp. 11–12. So, the fact that all three witnesses did not notice the detectives announcing themselves does not necessarily impugn the veracity of the detectives' account.

*Id.,* 585 F.3d at 913.

In this case, Officer Jones admits that he chased a different suspect across Woodland Ave. (the opposite direction from where Lentz chased his suspects).[83] Jones does not know where Officer Lentz went during his foot pursuit.[84] Jones was cautious during his foot chase because he did not know whether the suspect had a gun.[85] In fact, Jones admits he focused on his suspect because the suspect presented a life-threatening risk to Jones.[86] Although the dispatch audio recording proves that several officers broadcasted during the foot pursuit, Jones admittedly did not

---

[81] *Nelson v. City of Davis*, 571 F.3d 924 (9th Cir. 2009).
[82] *Neal v. Oilfield Instrumentation, USA*, No. 4:13CV00741 BSM, 2015 WL 14103327, at *3 (E.D.Ark. Jan. 29, 2015), *citing Prosser*, 70 F.3d at 1008.
[83] Doc #: 107-1, PageID # 3222-3223.
[84] *Id.*
[85] *Id.* at PageID # 3227.
[86] *Id.* at PageID #3229-3230.

hear the broadcasts – particularly Keane's broadcast of "*more shots fired – foot pursuit.*"[87] Ultimately, Jones admits that he cannot testify about what Officers Lentz and Keane may have heard.[88] Like *Chappell,* Jones was focused on chasing his suspect and was not focused on the radio broadcast or other events happening in the area. Under *Chappell*, Jones testimony (that he did not hear any gunshots during the foot pursuit), does not create a genuine issue to defeat summary judgment. Any testimony by Jones that he did not hear gunshots does not refute Plaintiffs' admissions that they did hear gunshots.[89]  Since Lentz and Keane did not violate any clearly established constitutional right, they're entitled to qualified immunity.

### 4.     Lentz Is Entitled To Qualified Immunity For His Alleged Misperceptions.

Plaintiffs claim that Lentz's report contains fabrications that he saw gunfire from the Sutton vehicle while on Woodland, and he saw Phillips "carrying a weapon" as he fled on foot.[90] The issue is not whether he saw the gunfire *actually* come from Suttons' vehicle or saw Phillips *actually* carrying a gun. Rather, the issue is whether, under the circumstances, Lentz reasonably thought that he saw these things.[91]

Even if Lentz was mistaken about seeing a gun and a suspect throwing that gun, that does not equate to fabrication of evidence. There are "hurdles facing a plaintiff alleging a due process violation for fabrication of evidence." A plaintiff must demonstrate a "meaningful connection"

---

[87] *Id*. at PageID # 3224, 3234-3235.

[88] *Id*. at PageID # 3240, 3243-3244.

[89] "[A]n explained absence of evidence ... is not evidence of absence." *Cooper v. City of Columbus, Ohio*, No. 22-3251, 2023 WL 1434055, at *4 (6th Cir. Feb. 1, 2023); *Presnall v. Huey* [657 F. App'x 508, 512 (6th Cir. 2016)]; *Jordan v. Howard*, 987 F.3d 537, 546 (6th Cir. 2021).

[90] Lentz's Field Report at Doc# 104-2, PageID # 2737-2738.

[91] In *Moore v. City of Memphis*, 853 F.3d 866, 871–72 (6th Cir. 2017), in a similar circumstance, the Sixth Circuit identified the salient issue as follows:  "The plaintiffs argue that a genuine dispute exists as to whether Moore pointed a gun at Officer Penny; in their view, Penny might have seen the phone in Moore's hand and mistakenly thought it was a gun. Be that as it may, however, **the relevant question is not whether Moore in fact had a gun in his hand, but whether [Officer] Penny reasonably thought that Moore did**."  (Emphasis added).

12

between the injury and the use of the fabricated evidence. There is also a requirement that the evidence be "so significant that it could have affected the outcome of the criminal case." And, the standard required to demonstrate that evidence is fabricated is a "notable bar." As an example, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."[92]

In *Hicks v. Scott*, 958 F.3d 421, 437 (6th Cir. 2020), the Sixth Circuit engaged in a similar analysis regarding a police officer's alleged misperception whether a suspect had a gun:

> The fact that Boggs did not see the rifle "does not refute" the officers' testimony that Quandavier was carrying a rifle when he was shot—"it establishes only" that Boggs did not see the rifle *after* the shooting. *Chappell*, 585 F.3d at 914. The testimony, at most, creates "metaphysical doubt as to the material facts," which cannot defeat a motion for summary judgment.[93]

There is no dispute that (1) Sutton's white car, the gold car (*i.e.* which Plaintiffs contend was the shooting vehicle), and the black Lincoln vehicles were all next to each other when the gunshots were fired, (2) Sutton's vehicle fled when Officer Lentz and Keane attempted to pull him over, (3) when Sutton's vehicle stopped on East 65th St., the occupants bailed out of the car and fled on foot from the officers into the darkness and around residential houses, (4) gunshots were fired during the foot pursuit, and (5) Lentz witnessed Phillips admittedly throw an object from his hand into a grass field during the foot pursuit. Even if mistaken, Lentz's perception that the gunshots were fired from the Sutton vehicle and Phillips discarded a gun during the foot pursuit was reasonable under the circumstances. There is simply no evidence of fabrication here even if

---

[92] *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69–70 (3d Cir. 2017)(internal citations omitted); *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)("Therefore, for example, a witness's misidentification should not be regarded as a fabrication in the absence of persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith.").
[93] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

13

Lentz's perception of events in the dark at 2:00 a.m. was mistaken.  Lentz is entitled to qualified immunity.

> ## D.      Lentz And Keane Are Entitled To Judgment On Counts II And VI --- Federal And State Law Malicious Prosecution.

A claim of malicious prosecution under the Fourth Amendment encompasses wrongful investigation, prosecution, conviction, and incarceration.[94]  "The 'tort of malicious prosecution' provides a remedy for the wrongful institution of legal process."[95]  To make out a § 1983 claim for malicious prosecution, a plaintiff must establish: "(1) that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty ... apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor."[96]  A malicious prosecution claim fails if the plaintiff does not demonstrate each element.[97]

Under Ohio law, "the elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."[98]  All three elements must be shown in order against a person who initiates or procures institution of criminal proceedings against another to be subject to liability.[99]

One common element to both the federal and state malicious prosecution is the lack of probable cause for the prosecution.  In this case, Plaintiffs cannot show a lack of probable cause.

---

[94] *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir.2010).
[95] *Id.* (citing *Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 1096, 166 L.Ed.2d 973 (2007).
[96] *Jones v. City of Elyria, Ohio,* 947 F.3d 905, 918 (6th Cir. 2020)(emphasis added), citing *Sykes,* at 308–09.
[97] *Waseleski v. City of Brooklyn,* No. 1:23-CV-00548, 2025 WL 896097, at *11 (N.D.Ohio Mar. 24, 2025), *citing Dillon v. Hamlin,* 718 F. Supp.3d 733, 745 (S.D.Ohio 2024).
[98] *Rogers v. Barbera,* 170 Ohio St. 241, 241 (1960), syllabus ¶1.
[99] *Ash v. Ash,* 72 Ohio St.3d 520, 522 (1995).

## 1.      There was probable cause for the prosecution.

"Probable cause is a purely legal question that is to be determined by the court and is not an issue within the jury's province."[100] "[T]he ultimate question of probable cause *** in a civil case when the historical facts are undisputed is a question of law for the court and not a jury."[101]

Probable cause "is not a high bar."[102] It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[103] "It is important to recognize that probable cause may exist despite the fact that no crime actually occurred."[104] "One need not even have evidence to ensure a conviction."[105] "Probable cause is established where 'facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged.'"[106]

The fact that Plaintiff Phillips and Sutton's car both tested positive for gunpowder residue[107] – combined with all the other facts referenced above in this brief – were more than sufficient to establish probable cause to prosecute the Plaintiffs. Beyond that, it is well-settled that the "finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause."[108] Where "probable cause has *per se* been established by grand jury indictment" and, therefore, no action for malicious prosecution will lie."[109] When the plaintiff fails to show the indictment was not the result of the prosecutor's uncontrolled

---

[100] *Carr v. Johnson*, No. 1:17 CV 620, 2018 WL 6568511, at *5 (N.D.Ohio Dec. 13, 2018), citing *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).
[101] *White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 7640932, at *12 (N.D.Ohio Dec. 23, 2020).
[102] *D.C. v. Wesby*, 199 L.Ed.2d 453, 138 S.Ct. 577, 586 (2018).
[103] *Id*.
[104] *Garrett v. Fisher Titus Hosp.*, 318 F. Supp.2d 562, 574 (N.D.Ohio 2004).
[105] *Id*.
[106] *Depew v. City of Solon*, No. 1:22-CV-01251, 2023 WL 2242795, at *8 (N.D.Ohio Feb. 27, 2023); *Fineout v. Kostanko*, 780 F. App'x 317, 329 (6th Cir. 2019).
[107] Doc #: 121-2, PageID # 5877-5878.
[108] *Snow v. Nelson*, 634 F. App'x 151, 157 (6th Cir. 2015); *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006); *Burnette v. City of Norton*, No. 5:22-CV-02342, 2026 WL 380547, at *4 (N.D.Ohio Feb. 11, 2026).
[109] *Stanley v. City of Norton*, 124 F. App'x 305, 310 (6th Cir. 2005).

15

discretion to prosecute, the presumption of probable cause raised by the indictment is unrebutted.[110] The exception to this rule is "when defendants deliberately or recklessly present false testimony to a grand jury in order to obtain an indictment."[111]

Plaintiffs were indicted by the Cuyahoga County Grand Jury.  The case was presented by Det. Hartman, not Officers Lentz and Keane.  There is no evidence that they presented false testimony in order to obtain an indictment.  Lentz and Keane are entitled to qualified immunity.

### 2.     Keane and Lentz did not institute the prosecution.

"To prevail, [a plaintiff] must first show that the officers participated in or influenced the decision to criminally prosecute him. And because we construe participation in light of traditional tort causation principles, the officers must have done more than passively cooperate. Instead, [a plaintiff] must show that the officers aided in the decision to prosecute."[112]

In this case, Officer Keane was taken to the hospital from the incident scene.  He did not write a report, issue any statement, provide any information to a detective, or provide any information to a prosecutor.  He played no role whatsoever in initiating or influencing the prosecution of the Plaintiffs. While Officer Lentz prepared a field report and spoke with Detective Hartman about the incident, he did not provide any information to a prosecutor, request any criminal charges be made, or make any effort to initiate or influence the decision to prosecute the Plaintiffs.

Even if Lentz or Keane would have initiated or influenced the decision to prosecute the Plaintiffs, there is no evidence that either of them knew, interacted, or had any conflicts with the Plaintiffs before or after the shooting incident. That is, there is no evidence that Officers Lentz or

---

[110] *Barnes v. Beachwood* (8ᵗʰ Dist.), 2006-Ohio-3948, ¶20, citing *Robbins,* 72 Ohio App.3d at 363.
[111] *Snow*, 634 F. App'x at 157.
[112] *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022)(internal citations and quotations omitted).

Keane acted with malice to encourage prosecution of the Plaintiffs. At best, Officer Lentz may have mistakenly perceived the gunshots as coming from the Sutton vehicle instead of the gold vehicle. But as explained above in this brief, such a mistaken perception was unquestionably reasonable under the circumstances.  Further, the facts that Plaintiff Phillips and Sutton's car both tested positive for gun powder residue[113] – combined with all the other facts referenced above in this brief – were more than sufficient to establish probable cause to prosecute the Plaintiffs.

The bottom line is that Plaintiffs cannot prove the elements of either federal or state malicious prosecution claims.  Lentz and Keane are otherwise entitled to qualified immunity.

      **E.**       **Keane and Lentz Are Entitled Judgment On Count III – The *Brady* Claim**.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[114] "Evidence is material and prejudice established if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense."[115] "A reasonable probability is one `sufficient to undermine confidence in the outcome.'"[116]

The only evidence allegedly suppressed in this case was Officer Jones' alleged exculpatory statement (*i.e.* that there were no gunshots fired during the foot pursuit), while at the Courthouse.[117] Plaintiffs' Complaint only alleges that Defendant Hartman and/or the County Prosecutor suppressed this evidence. *Id.*  Neither the Plaintiffs' Complaint nor any other evidence in this case

---

[113] Doc #: 121-2, PageID # 5877-5878.
[114] *O'Donnell v. Yezzo*, No. 21-3396, 2022 WL 130885, at *9 (6th Cir. Jan. 14, 2022), citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).
[115] *Gabrion v. United States*, 43 F.4th 569, 582 (6th Cir. 2022), *citing Strickler* at 281.
[116] *Gabrion*, *Id.*, citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
[117] Doc #: 1, PageID # 8-10.

suggests that Officers Lentz or Keane suppressed or hid evidence from the Sutton or Phillips defense attorneys. Yet, Plaintiffs inexplicably include Officers Lentz and Keane in their *Brady* claim. Absent any evidence that Officers Lentz or Keane withheld evidence from the Plaintiffs, their *Brady* claim fails as a matter of law and they are otherwise entitled to qualified immunity.

**F.** **Officers Lentz and Keane Are Entitled To Judgment On Claim IV - State Law Willful, Wanton, Reckless Claim.**

Lentz and Keane possess immunity against negligence claims.[118] "An employee is immune from liability for negligent acts or omissions,"[119] and "[a]llegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties."[120] Furthermore, Ohio law does not recognize a distinct cause of action for willful, wanton, and reckless conduct. Rather, these are merely elements of various other causes of action,[121] and federal courts agree.[122] Thus, Movants are entitled to judgment on this claim.

**G.** **Officers Lentz and Keane Are Entitled To Judgment On Claim V-Civil Remedy for Criminal Acts under R.C.2307.60(A)(1).**

R.C. 2307.60(A) provides a civil remedy to recover damages caused by the criminal acts of another.  Plaintiffs allege that Officers Lentz and Keane committed a misdemeanor under R.C. 2921.45, which states that "No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."  As noted above, there is no evidence that either Keane or

---

[118] R.C. § 2744.03(A)(6).

[119] *Anderson v. Massillon,* 134 Ohio St.3d 380, 385, 2012–Ohio–5711, ¶23.

[120] *Fondale v. Guernsey Cty. Children's Servs.*(5th Dist.), 2012-Ohio-3621, ¶31; *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356 (1994 .

[121] *Griggy v. Cuyahoga Falls*, 2006–Ohio–252, ¶8 (9th Dist.); *Cincinnati Ins. Co. v. Oancea* , 2004–Ohio–4272, ¶17 (6th Dist.); *Caraballo v. Cleveland Metro. Sch. Dist.*, 2013-Ohio-4919, ¶34 (8th Dist.).

[122] *Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016)(reckless, wanton, or willful conduct is not a stand-alone cause of action); *Wiggins v. DuPont*, No. 1:17-CV-1107, 2018 WL 2364946, at \*9 (N.D.Ohio May 24, 2018); *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106, at \*3 (N.D.Ohio Mar. 7, 2012); *Brown v. Whirlpool Corp.*, 996 F. Supp.2d 623, 643 (N.D.Ohio 2014); *Ward v. Cnty. of Cuyahoga*, 721 F. Supp.2d 677, 694 (N.D.Ohio 2010).

18

Lentz knowingly deprived Plaintiffs of a constitutional right. Thus, Plaintiffs' R.C. 2307.60(A) claim fails as a matter of law.

### H.      Officer Keane and Lentz Are Entitled To Judgment On Claim VII – Abuse of Process.

In Ohio, the three elements of an "abuse of process" tort are (1) a legal proceeding set in motion in proper form and with probable cause, (2)  the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) that direct damage has resulted from the wrongful use of process.[123]  There is no liability for abuse of process when the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.[124]

"[A] plaintiff's assertion that probable cause did not exist for his criminal prosecution is fatal to his abuse of process claim."[125] A malicious prosecution claim is incompatible with the first element of their abuse of process claim.[126]

"[T]he gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."[127] But, being "charged by the state, arrested, tried by a jury, and exonerated, undoubtedly causing him to incur legal expenses, these are all anticipated by-products of a criminal prosecution and within the ambit of the judicial process."[128]

---

[123] *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 1994-Ohio-503, 68 Ohio St.3d 294, syllabus ¶1.
[124] *Id.*, 68 Ohio St.3d at 298, fn. 2.
[125] *Thomason v. AT & T*, 2018-Ohio-4914, ¶36 (7th Dist.); *Tablack v. Wellman*, 2006-Ohio-4688, ¶¶ 141-142 (7th Dist.)(abuse of process and malicious prosecution claims are incompatible and contradictory to each other).
[126] *Huff v. Mahajan*, No. 1:20-CV-2499, 2022 WL 3921094, at *5 (N.D.Ohio Aug. 31, 2022), *citing Levey & Co. v. Oravecz*, 2004-Ohio-3418, ¶8 (9th Dist.).
[127] *Palivoda,* 2011-Ohio-5231, ¶24.
[128] *Palivoda v. Felix*, 2011-Ohio-5231, ¶37 (11th Dist.).

19

"[I]n order to show the process was perverted to accomplish an ulterior purpose the plaintiff must identify both an act committed during the process that was not proper in the normal conduct of the proceeding and the defendant's ulterior motive."[129] Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.[130]

Here, Plaintiffs allege a vague abuse of process claim against Officers Lentz and Keane.[131] But the Plaintiffs' claim fails for several reasons.  First, Plaintiffs present no evidence that Officer Keane or Lentz instituted a legal proceeding against Sutton or Phillips. Officer Keane never made or signed any written document pertaining to this case (*e.g.* written statement, police report, criminal complaint), spoke to a detective, spoke to a prosecutor, or engaged in any action that initiated the criminal proceeding. Officer Lentz created a police report about the incident, but Lentz did not present the case to the prosecutor or request that charges be filed against Sutton or Phillips. Rather, Det. Hartman conducted his own investigation, presented his own report to the City Prosecutor Angela Rodriguez and she signed a felony review form initiating charges against Sutton and Phillips.[132] Second, the Plaintiffs fail to identify, and discovery in this case has not revealed, any evidence of an ulterior motive on the part of Lentz or Keane to criminally prosecute Plaintiffs. There is no evidence that the Officers ever knew, interacted with, or had any conflicts with Plaintiffs before/after the night of the shooting incident. Absent evidence of an ulterior motive or benefit to the Officers, Plaintiffs cannot maintain their abuse of process claim as a matter of law.

---

[129] *Cox v. Oliver*, 2016-Ohio-4575, ¶15 (2d Dist.).

[130] *Alabsi v. City of Cleveland*, No. 1:20-CV-01933-CEH, 2022 WL 875243, at *4 (N.D.Ohio Mar. 23, 2022), aff'd, No. 22-3375, 2023 WL 334893 (6th Cir. Jan. 20, 2023)(abuse of process does not "occur when a party uses the court to pursue a legal remedy that the court is empowered to give.").

[131] Doc #: 1, PageID # 27.

[132] Doc #: 120-2, PageID # 5861-5862 (felony review forms).

20

Respectfully submitted:

/s/  Kenneth A. Calderone
Kenneth A. Calderone (0046860)
John D. Latchney (0046539)
Michael Ockerman (0053403)
Hanna, Campbell & Powell, LLP
*Attorneys for Defendants Daniel Lentz, Michael Keane, and Carl Hartman*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the Memorandum in Support adheres to the page limitations of Loc. R. 7.1(f).

/s/  Kenneth A. Calderone
Kenneth A. Calderone (0046860)
*Attorney for Defendants Daniel Lentz, Michael Kean, and Carl Hartman*

HCP #1452449

21